**FEDERAL DEPOSIT INSURANCE CORPORATION**

v.

**Charles S. RAMSEY, Jr.**

**No. CIV. 3-84-719.**

United States District Court,
E.D. Tennessee, N.D.

June 28, 1985.

Patricia Horton, Rex R. Veal, John C. Speer, Knoxville, Tenn., for plaintiff.

Robert J. English, Knoxville, Tenn., for respondent.

## MEMORANDUM

JARVIS, District Judge.

This is a suit on a promissory note brought by the Federal Deposit Insurance Corporation [FDIC] in its corporate capacity. The case is before the Court on FDIC's motion for summary judgment.

The note was executed by defendant in favor of United American Bank-Knoxville [UAB–K] on May 22, 1979, in the amount of $266,666.67. The note was transferred to the First Tennessee Bank pursuant to a Purchase and Assumption Agreement [P & A Agreement] entered into between the FDIC and First Tennessee after the failure of UAB–K. First Tennessee brought suit on the note in chancery court, and subsequently FDIC-corporate was substituted in the stead of First Tennessee and removed the case to this Court.

Defendant has admitted executing the note but denies liability on the following grounds: (1) fraud, (2) duress, and (3) estoppel. In response FDIC says that (1) it is a holder in due course and federal common law bars fraud related defenses against it; (2) defendant has failed to allege facts sufficient to assert a duress defense; (3) defendant is estopped from asserting duress, and (4) no conduct of FDIC gives rise to the defense of estoppel by defendant.

■ "[W]hen the FDIC in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defense against the note, it takes the note free of all defenses that would not prevail against a holder in due course." *FDIC v. Wood*, 758 F.2d 156, 161 (6th Cir.1985). Actual knowledge of any defenses must be shown as of the date the FDIC entered into the P & A agreement. *Id.* at 162.

Defendant argues that FDIC did not give value for the note at the time of the P & A agreement because, under the terms of the P & A agreement, the note was transferred to First Tennessee Bank and was retransferred to FDIC only after defendant had raised defenses to the note in the chancery court proceeding brought by First Tennessee Bank. FDIC says that it gave value for the note at the time of the P & A agreement in the form of loss assistance.

■ The Court is of the opinion that FDIC meets the requirements of a holder in due course. Under the terms of the P &

A agreement, FDIC was obligated to reimburse First Tennessee for any loss sustained in excess of 86.5 million dollars. (*See* Doc. 23, exh. A, Purchase and Assumption Agreement § 3.2.). The P & A agreement defines a loss as "any dimunition in the value of the Bank's assets resulting from their classification as a Loss by FDIC ... and their being charged or written-off by Assuming Bank...." (*Id.* at § 1.2). By affidavit the FDIC says that the promissory note at issue was determined to be a loss, whereupon FDIC paid the balance due on the note to First Tennessee. (Doc. 23, Affidavit of Mel Edmondson). Thus, the Court is of the opinion that FDIC acquired the note in good faith, for value, and without actual knowledge of any defense against the note at the time it entered into the P & A agreement. Thus defendant's defenses of fraud, misrepresentation, and failure of consideration are barred.

Defendant asserts that a question of fact exists whether he executed the note in question under duress. The facts show that defendant met with Frank Woods, president of the United American Bank-Nashville [UAB-N] in January 1979 to discuss refinancing of loans at UAB-N in the amount of approximately five to six million dollars. (Doc. 10, Discovery Deposition of Charles S. Ramsey, Jr., Jan. 10, 1985 [hereafter Ramsey Depo.] at 33-35). Defendant says that at this meeting Mr. Woods stated, "I need to recapitalize United American Bank, and since you all are my largest borrowers, I need a favor. [W]e would like for you to become a member of the family and purchase some stock in United American Bank." (*Id.* at 34-35). Mr. Woods allegedly stated that he needed defendant and others to purchase about a million dollars in stock in UAB-N. (*Id.*). Mr. Ramsey stated that he would be unable to pay for that amount of stock and Mr. Woods allegedly said, "Don't worry about it, I will take care of it." (*Id.*). Subsequently, on May 22, 1979, defendant executed the note in issue in the amount of $266,666.67 to purchase 111,111 shares of stock in UAB-N. (Doc. 23, exh. A, Promissory Note).

Defendant says that because of the timing of Mr. Woods' request that he purchase stock in the UAB-N, he felt under a compulsion to purchase the stock in order to secure the refinancing of the five to six million dollar notes. By affidavit, Frank Woods states that he never made any written or oral representation to Mr. Ramsey that he would not receive a renewal on any obligation held by UAB-N because of Mr. Ramsey's failure to execute any other notes. (Doc. 24, Affidavit of Frank Woods). Mr. Woods further states that he never put any pressure on Mr. Ramsey to execute the note in issue. (*Id.*). Mr. Woods also states that to the best of his knowledge UAB-N never refused to renew any note on which Mr. Ramsey was directly liable. (*Id.*). Defendant acknowledges that Mr. Woods never told him that unless he bought the stock he would not get a renewal of the other notes. [Ramsey depo. at 33].

Duress is defined as "an unlawful restraint, intimidation, or compulsion of another to such an extent and degree as to induce such other person to do or perform some act which he is not legally bound to do, contrary to his will and inclination." *Johnson v. Ford*, 147 Tenn. 63, 86, 245 S.W. 531 (1922). The alleged coercive event must be of such severity, either threatened, impending or actually inflicted, so as to overcome the mind and will of a person of ordinary firmness. *Fogg v. Union Bank*, 63 Tenn. [4 Baxter] 530, 535 (1830).

The Court is of the opinion that the facts set forth in the case, taken in the light most favorable to defendant, are insufficient as a matter of law to support a defense of duress. The undisputed facts show that no threat was made to defendant that, unless he executed the note at issue, he would not receive renewal of another obligation. Defendant's subjective belief that he was under pressure to purchase the

stock simply because of the timing of Mr. Woods' request is insufficient to show an unlawful restraint, intimidation or compulsion to such a degree as to induce a person of ordinary firmness to perform the act against his will. Further, defendant executed the note several months after the meeting at which he allegedly felt compelled to execute the note. Thus, clearly defendant was under no immediate compulsion to execute the note. Finally, defendant never complained about the execution of the note until a lawsuit was filed in an attempt to collect judgment on the note. For these reasons, the Court finds that defendant's duress defense is without merit.

█ Defendant asserts that FDIC should be estopped to collect the note because at the time it assumed the note it was aware of defendant's defenses to the note. It has been held that the FDIC is estopped to collect on a note where by its actions it led defendants to believe that it would not look to them for payment of the note. *See* *FDIC v. Harrison,* 735 F.2d 408 (11th Cir. 1984). In *Harrison,* the FDIC brought suit against guarantors of a promissory note made by one Henry B. Bell. The court held that the FDIC was estopped to bring suit against the guarantors of the note because the FDIC had told the guarantors that Bell was paying on time, that the guarantors would not be held liable on the note, and the guarantors, in reliance on FDIC's representation, paid off other notes held by FDIC. In the case *sub judice* defendant has alleged no representations by FDIC upon which he relied to his detriment. Thus the Court is of the opinion that FDIC is not estopped to collect on the note at issue.

For the foregoing reasons, plaintiff's motion for summary judgment be, and the same hereby is, GRANTED. It is further ORDERED that the parties will submit an appropriate judgment for entry.

Order Accordingly.