**Bettye Carol McCLELLAN,
Plaintiff/Appellant,**

v.

**Fred Bass McCLELLAN,
Defendant/Appellee.**

Court of Appeals of Tennessee,
Western Section,
at Jackson.

Oct. 13, 1993.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 28, 1994.

David Hardee, Hardee & Martin, Jackson, for plaintiff/appellant.

Tom Murray, Jackson, for defendant/appellee.

FARMER, Judge.

In this divorce action, Wife appeals from the trial court's award of the marital residence to Husband.

Betty Carol McClellan ("Wife") and Frederick Bass McClellan ("Husband") were married on January 7, 1984. No children were born of the marriage although each has a child from a previous marriage. The parties separated in January 1991 and Wife filed a complaint for divorce on January 31, 1992 alleging cruel and inhuman treatment. Husband filed a counterclaim alleging inappropriate marital conduct and irreconcilable differences.

At the time of trial, September 1992, Wife was 41 and Husband was 43. Wife testified that when the parties first married, she worked as a computer operator. During the marriage, she attended computer and accounting classes at Jackson State Community College and earned her degree. She has worked as an accounts payable clerk, file clerk and paralegal trainee. She presently works as a bookkeeper earning a net income of $184.70 per week. Husband currently works at Jackson Utility Division (JUD) and Get–It–N–Go. Husband's affidavit of expenses lists his net monthly income at $1,198 from JUD and $280 from Get–It–N–Go. His monthly expenses are listed at $2,013.90.

The chancellor held that both parties were entitled to a divorce on grounds of inappropriate marital conduct. Husband was awarded the marital residence and its remaining

indebtedness,[1] his pension plan,[2] any accounts in his name only and all personal property currently in his possession. Husband was ordered to pay the remaining indebtedness on his credit cards (Sears and Discover) and $222.40 to Dr. Staples. Wife was awarded any accounts in her name only and all personal property currently in her possession.[3] Wife was ordered to pay the remaining indebtedness to the Animal Clinic, Kisbers and the T.V.A. Credit Union. Wife was denied an award of alimony.[4]

The sole issue on appeal is whether the trial court erred in failing to award at least one-half of the marital residence to Wife either as alimony or as a division of marital property. Husband contends that the residence is his own separate property. Alternatively, he asserts that even if the residence is marital property, the trial court did not err in awarding it to him. Wife valued the marital home at $60,000 and Husband stated a value of $55,000. A real estate broker valued it at approximately $55,000. The home is encumbered with two mortgages totaling approximately $50,000. The total monthly mortgage payment is approximately $500. Both Husband and Wife stated that the down payment for the home's purchase ($20,000) was made with funds inherited by Husband. Wife testified that the property is titled to "Frederick B. and Carol B. McClellan."

T.C.A. § 36–4–121(a) provides for the division of marital property only. Thus, it is incumbent upon the trial court to first classify the couple's property. *Batson v. Batson,* 769 S.W.2d 849, 856 (Tenn.App.1988). Although the record reveals no express classification by the trial court, we necessarily conclude that the chancellor determined the residence to be marital property. The final decree provides that "all right, title, and interest of [Wife] in and to the house . . . is . . . divested out of [Wife] and vested in [Husband] and said property shall be the [husband's] sole and separate property."

■ We find the record to support the trial court's classification of the property as "marital." *Batson* states:

> Another panel of this Court recognized recently that separate property may become part of the marital estate if its owner treats it as if it were marital property. Professor Clark describes the doctrine of transmutation as follows:
>
> > [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.
>
> 2 H. Clark, *The Law of Domestic Relations in the United States* § 16.2, at 185 (1987).

*Batson,* 769 S.W.2d at 858.

Husband asserts that he agreed to have the property titled in both their names only under duress. Wife testified that she threatened to sue for divorce if the property was not also titled in her name. The court in *Federal Deposit Ins. Corp. v. Ramsey,* 612 F.Supp. 326 (E.D.Tenn.1985) defined duress as follows:

1. By letter opinion dated September 28, 1992, the court found "little or no equity" in the marital home and that two mortgages encumbered the property.

2. Husband testified that he could collect his pension in the year 2014 and that its future value was approximately $11,000 to $12,000.

3. Wife testified that the parties' division of personal property was "within $200 in [Husband's] favor. . . ."

4. The chancellor denied alimony to Wife "because of [Husband's] inability to pay."

**352**

an unlawful restraint, intimidation, or compulsion of another to such an extent and degree as to induce such other person to do or perform some act which he is not legally bound to do, contrary to his will and inclination. *Johnson v. Ford,* 147 Tenn. 63, 86, 245 S.W. 531 (1922). The alleged coercive event must be of such severity, either threatened, impending or actually inflicted, so as to overcome the mind and will of a person of ordinary firmness. *Fogg v. Union Bank,* 63 Tenn. [4 Baxter] 530, 535 (1830).

*Federal Deposit,* 612 F.Supp. at 328. We cannot agree with Husband that Wife's threats to file for divorce constitute duress as heretofore defined. Wife testified that two weeks into the marriage Husband began physically and mentally abusing her. "[T]he assertion of an intention to pursue a legal remedy ordinarily is not considered duress." 86 C.J.S. *Threats & Unlawful Communication* § 27 (1954). *See also Gilley v. Gilley,* 778 S.W.2d 862, 864 (Tenn.App.1989) (where wife has legal basis for prosecuting divorce, it is not improper to negotiate agreement to forgo claim and Husband cannot claim agreement was executed under duress).

Husband testified that "[o]ne of the reasons I bought the house was so we could have a family situation with my son coming over...." When asked whether he "intended to have that house for the family," he responded "[f]or a family, yes." Wife testified that upon purchasing the home she "planned to live the rest of [her] life there and make a family, a home." We conclude that the trial judge correctly characterized the property as marital.

■ *Batson* additionally holds:

Tenn.Code Ann. § 36–4–121(c)(1) permits trial courts to consider the duration of the marriage. In cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place. *In re Marriage of McInnis,* 62 Or.App. 524, 661 P.2d 942, 943 (1983).

*Batson,* 769 S.W.2d at 859. Husband testified that he inherited and brought into the marriage approximately $120,000. Virtually the entire amount was spent during the marriage. We find no error by the trial court in awarding the marital home, having little or no equity, to Husband as a division of the marital estate. We further find no abuse of discretion in failing to award the home to Wife as alimony.

The judgment of the trial court is affirmed. Costs are taxed to Appellant, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.