## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

EDWIN CARROLL ELAM,      )
     )
     Plaintiff/Counter Deft./      )   **McNairy Chancery No. 7187**
     Third Party Deft./Appellee, **)**
     )   **Appeal No. 02A01-9812-CH-00362**
VS.      )
     )
MARTHA PEARL (SWINEY) ELAM,      )
     )
     Defendant/Counter Pltf./      )
     Appellant,      )
     )
CANDICE LOU GARRISON,      )
     )
     Third Party Deft./      )
     Appellant.      )

> **FILED**
>
> **August 30, 1999**
>
> **Cecil Crowson, Jr.**
> **Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF McNAIRY COUNTY
AT SELMER, TENNESSEE
THE HONORABLE DEWEY C. WHITENTON, CHANCELLOR

**CHADWICK G. HUNT**
**REYNOLDS, REYNOLDS & HUNT**
Savannah, Tennessee
Attorney for Appellants

**CHARLES L. TROTTER, JR.**
**TROTTER & JACKSON, P.L.L.C.**
Huntingdon, Tennessee
Attorney for Appellee

**REVERSED AND REMANDED**

                         **ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

     Martha Elam ("Wife" or "Appellant") appeals the trial court's order which awarded

Edwin Elam ("Husband" or "Appellee") an undivided 1/3 interest in the 171-acre tract of real property after deducting the sum of $24,750 (the value of Wife's separate interest at the time of inheritance), and awarded Husband an equitable lien on the 60-acre tract of land (the "Homeplace") for ½ of the undetermined value over $32,800. The trial court awarded Wife an interest in the 171-acre property in the amount of $24,750 and a 2/3 interest in value of said property over that amount. The trial court refused to set aside the conveyance of the Homeplace tract from Wife to Wife's daughter, Candice Garrison ("Garrison" or "Appellant"), but made it subject to the equitable lien of Husband.

### I. Factual and Procedural History

The Elams married on August 4, 1966. Husband sued Wife for divorce on October 21, 1997. Wife filed her own complaint on October 30, 1997. Husband commenced a third-party action on December 16, 1997 against Garrison to set aside a conveyance of marital real estate from Wife to her daughter, Garrison. The Chancellor consolidated the cases and tried them on May 8, 1998 without a jury.

In 1986 Wife's mother died testate. Wife inherited an interest in two pieces of real estate at the heart of this litigation. One is known as the Homeplace, which includes a house and 60 acres of land. The other is known simply as the 171-acre farm. Wife took the Homeplace outright and inherited a ½ undivided interest with her brother in the 171-acre farm. On October 2, 1987, Wife and Husband bought Wife's brother's ½ interest for $7,500 as tenants by the entirety.

Upon stipulation of the parties, the agreed value of the Homeplace at the time of the inheritance was $32,800. Husband worked on and improved the Homeplace, including the surrounding acreage. The Elams took up residence at the Homeplace in 1996. Husband testified that over $102,000 was spent in refurbishing the Homeplace and that in his opinion the total value of the land and improvements was approximately $190,000. Mr. Mark Alexander, a licensed appraiser, testified that based upon his survey of the

2

Homeplace, the value of the home and improvements was $75,000 - $80,000.

Wife conveyed the Homeplace to Garrison on September 16, 1997. Husband moved the court to set aside the conveyance. The Chancellor overruled Husband's motion but awarded Husband an equitable lien upon the property for ½ of the undetermined value over and above the $32,800 (the stipulated value at the time of inheritance). The Chancellor ordered the property sold. On appeal, Wife contends that the trial court erred in ordering the property sold without giving Wife an opportunity to buy out Husband's interest.

Wife also inherited a ½ interest in the 171-acre farm pursuant to her mother's will. Wife and Husband purchased the other ½ interest from Wife's brother for $7,500. Husband later entered into a mining lease with Adamsville Sand and Gravel to excavate large gravel deposits located on this tract. Husband testified that in his opinion the value of the 171-acre tract was approximately $300,000. The appraiser testified the value of the land was $180,000. The appraiser further testified that he was only licensed to appraise commercial property up to $250,000 and that in his opinion the mineral rights would cause the value of the property to exceed this amount.

The court held that as a result of transmutation, Husband was entitled to an undivided 1/3 interest in the 171-acre tract after deducting $24,750 (the stipulated value of Wife's interest at the time of inheritance). This property was also ordered sold if the parties could not reach a settlement within 90 days from the entry of the order. Wife argues that she should have been awarded her initial ½ interest in this property and an equal share of the ½ interest purchased by Husband and Wife, resulting in 3/4 interest to Wife and 1/4 interest to Husband. Husband argues that the trial court erred in awarding him a 1/3 interest in the property. Husband asserts he should have been awarded ½ interest in the 171-acre tract after setting apart $24,750 for Wife's separate interest.

## II. Property Division

3

In accordance with Tenn.R.App.P. 13(d), the role of this Court is to review the record made in the trial court de novo with the presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. Thus, we will affirm the trial court's decision unless there is an error of law affecting the result or unless the evidence preponderates against the trial court's factual determinations. Campanali v. Campanali, 695 S.W.2d 193, 194 (Tenn. App.1985) (citations omitted).

## A. The Homeplace

Wife inherited the Homeplace when her mother died in 1986. From the outset, Husband worked on and improved the Homeplace, including the surrounding acreage. The Homeplace house itself dated to 1909 and has historical significance, but Wife acknowledged at trial it was not in good condition when she inherited it. Boards were rotted, and the back porch was unusable. The porch was partially rotted and leaked. The electrical wiring was antiquated.

From the time Wife inherited the Homeplace, Husband built fences, repaired the barn and built sheds. As soon as the tenants left in 1989 or 1990, the Elams began rebuilding the house. Husband borrowed money to pay for the improvements on the Homeplace. He firmed up parts of the flooring. He sheetrocked the walls. He put down baseboards. He added new windows, new doors, new ceiling, new flooring, new trim and replaced the siding. He rewired and replumbed. When the Elams sold their house at River Heights in Crump, the Elams paid the mortgage and invested the $25,000 equity in the Homeplace. After selling the house at River Heights, the Elams took up residence at the Homeplace. Although the records were destroyed in a fire, Husband estimated he ultimately spent $102,000 on the Homeplace house itself and another $25,000 on improvements to the Homeplace grounds and the 171-acre farm.

Prior to trial, and unbeknownst to Husband, Wife conveyed the Homeplace to her daughter by a previous marriage, Candice Lou Garrison. Husband commenced a third party action against Ms. Garrison to set aside a conveyance of marital real estate from

4

Wife to Garrison.

At trial, Husband testified that the Homeplace was worth, in his estimation, $190,000 ($65,000 for the 60 acres of land, and $125,000 for the house and outbuildings). An appraiser testified that in his opinion the Homeplace was worth $75,000. Wife did not offer her personal opinion. Tax appraisal records were introduced which valued the Homeplace at $32,800 at the time of inheritance in 1986.

At the conclusion of the trial, the Chancellor found that there were no grounds for setting aside the deed executed by Wife to her daughter, Appellant Garrison, which was signed and delivered prior to separation. The trial court found that the Homeplace was worth approximately $32,800 at the time of inheritance and had increased in value due to improvements. The trial court found Husband to be entitled to ½ of the undetermined value over $32,800 and awarded him an equitable lien on said property. The trial court then ordered the property sold if no agreement was reached by the parties within 90 days.

Wife argues that the Chancellor abused his discretion in ordering the sale in light of the fact that neither of the original parties owns the property and the fact that the Chancellor refused to set aside the conveyance. Wife also argues that the Chancellor is forcing the sale of property that has been in the possession of Wife's family for generations. Wife asserts that if the Court had granted weight to the testimony of the appraiser, it could easily have ordered Wife to pay ½ of the value over $32,800 to Husband and allowed the inherited property to remain in the family. Wife testified at trial that she was prepared to pay Husband for his interest in order to keep the property she had inherited and which had long been in her family.

In light of the fact that Wife inherited this property from her family, and the property has been in Wife's family for generations, this Court is of the opinion that Wife should be allowed to pay Husband his interest. Additionally, forcing the sale of the property will result in harsh tax consequences due to the large capital gain which will arise from the sale.

5

Tennessee Code Annotated §36-4-121(c) directs the court to consider tax consequences as one of the relevant factors in making an equitable division of marital property. Tenn. Code Ann. §36-4-121(c)(9).

Husband contributed to the increase in value of the property and is entitled to ½ of the increase in value as per the trial court's order. The parties have not challenged the trial court's decision not to set aside the transfer to Garrison, and this Court will not address that ruling. However, the increase in value of the property was part of the "marital pot" to be divided between Husband and Wife by the trial court, and Wife shall be ultimately liable for paying Husband his interest in cash. However, if payment is not made to Husband, the property shall be sold, with Husband receiving his interest and Garrison, the owner of the property, receiving the balance.

For the above noted reasons, the trial court erred in ordering the Homeplace property sold. Wife shall be given the opportunity to pay Husband the value of his interest in the property. This matter shall be remanded to the trial court for a determination of value of the Homeplace.

**B. 171-acre Farm**

Wife also inherited a ½ interest in a 171-acre tract of land upon the death of her mother. Husband and Wife then purchased the outstanding ½ interest in the property from Wife's brother for $7,500 as tenants by the entireties. At trial, tax appraisal records were introduced which valued the property at $49,000 at the time of inheritance.

The 171-acre farm as inherited by Wife was unimproved, but relatives of both Elams adjoin the property. Husband negotiated a favorable written lease in late 1996 with Adamsville Sand and Gravel Company to take advantage of the gravel deposits on the property. The Elam's 1997 U.S. Individual Income Tax Return reflects gravel royalties received of $22,493. Besides the gravel lease, Husband cleared parts of the property as needed, improved the roads on the farm and bushhogged the entire 171 acres annually.

At trial, Husband valued the 171-acre farm, including mineral rights, at $300,000. Wife's trial expert valued the 171-acre farm at $180,000 excluding mineral rights. The expert testified that he was licensed to appraise property up to $250,000 and that, in his opinion, the value of the property including mineral rights might exceed $250,000.

The trial court found that Wife inherited a ½ undivided interest in the tract under her mother's will and Husband and Wife purchased the remaining ½ interest in said tract, all of which is subject to a gravel operation. The trial court ruled that, after deducting the value of ½ of the real estate value of $49,000 in 1986 ( $24,750), Husband was entitled to an undivided 1/3 interest in the undetermined value of said land and gravel interest and Wife was entitled to a 2/3 interest in the same. The trial court ruled that if the parties could not divide the property according to his order within ninety days, the tract of land should be sold and the proceeds divided as per the determined interest of each.

On appeal, Wife contends that Husband is only entitled to a 1/4 interest in the property, as his equal share of the ½ interest purchased by Husband and Wife from Wife's brother. Wife further contends that the trial court should not have ordered the property sold, but should have allowed Wife to pay Husband for his interest in the property. Husband contends that after subtracting the value of Wife's share of the property at the time of inheritance, Husband is entitled to ½ of the increase in value.

As with the Homeplace property, we find that the trial court erred in ordering the sale of the 171-acre farm. Due to the fact that this property was inherited by Wife and has been in Wife's family for generations, and due to the great tax liability which will be imposed on the parties with such a large capital gain, the trial court should have allowed Wife to retain the land and pay Husband for his interest. Wife testified that she believed she would be able to borrow the necessary money to pay Husband and pay it back out of the gravel operation. The trial court should have set a value for the property and allowed Wife the opportunity to pay Husband the value of his interest in the property.

7

With regard to the division of the 171-acre farm, we first note that the ½ interest purchased by Husband and Wife as tenants in the entireties is clearly marital and should be divided equally between the parties. Additionally, absent proof of transmutation, the value of Wife's ½ interest at the time of inheritance ($24,750) is clearly Wife's separate property. What remains to be divided is the increase in value of Wife's ½ interest.

In making its ruling, the Chancellor ruled that after deducting $24,750, Husband as a result of transmutation is entitled to an undivided 1/3 interest in the land and gravel interest. The doctrine of transmutation was addressed by this Court in the case of McClellan v. McClellan, 873 S.W.2d 350 (Tenn. App. 1993).

> Transmutation occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both of these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

Id. at 351.

While transmutation might apply to the situation at hand, the trial court made no mention of the property being treated in such a way as to give evidence of an intention that the property become marital. There was no evidence that the parties took title to Wife's inherited ½ interest in joint tenancy, and therefore no presumption of a gift to the marital estate. Furthermore, under the doctrine of transmutation, the value of the property at the time of Wife's inheritance (Wife's separate property) could become marital property by transmutation. Yet, under the trial court's ruling, the value of Wife's ½ interest at the time of inheritance remains her separate property, but the increase in value of her ½ interest became marital property by transmutation. It is inconsistent for the parties to treat Wife's original ½ interest as separate property, while treating the increase in value of same ½ interest as marital property.

8

It is more logical to this Court, that the trial court was attempting to divide the increase in value between the parties, as it did with the Homeplace. An increase in the value of separate property constitutes marital property if (1) it occurred during the marriage and (2) the non-owner spouse made some substantial contribution to the preservation and appreciation of the separate property. Cohen v. Cohen, 937 S.W.2d 823, 833 (Tenn. 1996). In the case of Harrison v. Harrison, 912 S.W.2d 124 (Tenn. 1995), the husband had an interest in a tract of farmland which was found to be his separate property. The 45.5-acre tract of farmland increased in value from $7,000 at the time of the parties marriage to $1,361,750 at the time of their divorce. The sole cause of the appreciation in value was the construction of a interstate highway across a portion of the larger 125-acre tract. The Tennessee Supreme Court found that, as the sole cause of the appreciation in value was the construction of the interstate, the wife's activities did not substantially contribute to the preservation and appreciation in value of the property. Id. at 127. The increase in value remained the separate property of the husband. Id.

In the case at hand, Husband clearly contributed to the increase in value of the property and is therefore entitled to some portion of the increase in value of Wife's separate ½ interest. In keeping with the trial court's ruling on the Homeplace, Husband would be awarded ½ of the increase in value of Wife's separate ½ interest in the 171-acre farm. Wife would be awarded the value of her separate property at the time of inheritance ($24,750), Husband and Wife would equally divide the increase in value of Wife's separate ½ interest, and Husband and Wife would equally divide the value of the remaining ½ interest which was clearly marital property. Simply stated, after first deducting Wife's $24,750 interest, Husband and Wife would share equally in the value above that amount.

However, it is unclear from the record how much of the increase in the value of the 171-acre tract is the result of Husband's activities in keeping up the land and Husband's efforts in obtaining the gravel lease, and how much of the increase in value is due to simple appreciation or inflation. The tract of land was valued at $49,000 in 1986 and is now valued at $180,000 to $300,000.

On remand, the trial court should take evidence to determine what percentage of the increase in value is due to Husband's efforts in maintaining the property and in obtaining the gravel lease, and what percentage of the increase in value is due to simple appreciation or inflation. Any increase in value to which Husband contributed should be treated as marital property and divided between Husband and Wife. Alternatively, If the trial court wishes to treat the property as marital by way of transmutation, we see no reason for the trial court to set aside the original value of Wife's ½ separate interest before dividing the property between the parties.

For all the foregoing reasons, the trial court erred in awarding Husband a 1/3 interest in the 171-acre farm after deducting the original value of Wife's separate ½ interest. The trial court also erred in ordering the property sold without first assessing the value of the property and allowing Wife to buy out Husband's interest.

## III. Conclusion

The judgment of the trial court is hereby reversed and remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellee, for which execution may issue if necessary._____

_____
HIGHERS, J.

CONCUR:

_____

10

CRAWFORD, P.J., W.S.


_____

FARMER, J.