IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, December 12, 2003

# BRIDGECOURT APARTMENTS PARTNERSHIP v. CARMEN H. ELLERBE

**Direct Appeal from the Chancery Court for Knox County**
**No. 155190-2      Hon. Daryl R. Fansler, Chancellor**

**FILED FEBRUARY 2, 2004**

**No. E2003-01298-COA-R3-CV**

Plaintiff paid off mortgage on apartments and then sued for an accounting, alleging overpayment. The Trial Court invoked the voluntary payment rule and dismissed the case. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Gene A. Stanley, Jr., Knoxville, Tennessee, for Appellants.

Thomas Privette, Jr., Knoxville, Tennessee, for Appellee.

**OPINION**

Plaintiff, Bridgecourt Apartments Partnership, acquired title to an apartment complex in Knoxville from Bel Air Associates ("Bel Air") a debtor in bankruptcy. At the time plaintiff acquired the apartment complex, defendant Carmen H. Ellerbe held a deed of trust on the property secured by a lien which constituted a first mortgage on the apartments.

At or about the time plaintiff acquired title to the property Ellerbe, by counsel, notified the bankruptcy attorney for Bel Air of default. Subsequently, plaintiff's partners negotiated with defendant over the amount of the indebtedness, and ultimately paid defendant $472,797.25 to

liquidate the outstanding indebtedness on the Ellerbe note, which payment was precipitated allegedly due to the necessity of plaintiff's closing a construction loan for renovation of the apartments.

This action was then brought for an accounting which asked the Court for a Judgment for the amount of any payment in excess of the true and correct amount of the indebtedness.

In defendant's Answer, she specifically denied she failed to perform any conditions, as alleged, and as an affirmative defense said that the plaintiff's payment was voluntarily made with full knowledge of the facts and without any fraud, duress or extortion, and plaintiff was therefore estopped from recovering. After the evidentiary hearing, the Chancellor filed a Memorandum Opinion and we quote, in pertinent part:

> . . . the plaintiffs in this case say that the payment was made under threat of foreclosure and therefore they were under duress. Certainly, Mr. Wise [a partner and attorney for plaintiff] was knowledgeable of all the facts and, indeed, he knew that for a sum smaller than what he was paying he could have reached the same result; that is, a release of the deed of trust. Yet the Plaintiffs chose to pay a larger amount in an effort to preserve the right to contest the reasonableness of the attorneys' fees and the calculation of the interest rate at a later date.
>
> . . .
>
> There was an option available to the Plaintiffs; they could have paid what they deemed owed and brought an action against the holder of the note, which would be Ms. Ellerbe, asking the Court to order her to release that deed of trust in as much as the underlying obligation had been satisfied, and ask the Court to impose statutory sanctions for her failure to release it.
>
> . . . But the Plaintiffs made a business decision in this case to go forward with the payment so they could arrange financing. And if there was a real duress, it was from the other lenders.
>
> It was made with all the knowledge of the facts, there was nothing unconscionable. They didn't like it . . . But there's nothing unconscionable about what has taken place here. There's certainly nothing illegal about what has taken place. There's been no statutory scheme cited to the Court, it's not a violation of public policy, and it fits squarely in the voluntary-payment rule.

The Court then entered Judgment dismissing the case, and plaintiff has appealed. Plaintiff argues that the evidence preponderates against the Chancellor's finding that plaintiff voluntarily and with knowledge of the facts, paid the indebtedness in a disputed amount on a reservation of rights payment.

Plaintiff argues that defendant's attorney had indicated a foreclosure would follow unless plaintiff paid the amount of the indebtedness demanded by appellant and that amounted to duress which rendered the payment involuntary. In response, defendant points to the testimony of Mr. Wise who was an attorney and a partner in Bridgecourt, who testified that defendant applied no pressure and had done nothing, but that the pressure came from the "Yount Deal" (another transaction). Interestingly, he explained that the pressure was due to interim financing, by a loan that had matured and had to be paid off.

A concise statement of the requisites for business compulsion or economic duress is set forth in 25 Am.Jur.2d *Duress and Undue Influence*, §7:

> To constitute business compulsion or economic duress, there must be a wrongful threat, financial distress must be caused by the wrongful threat, and there must be no reasonable alternative to the terms presented by the wrongdoer. The pressure must be wrongful, and not all pressure is wrongful. Actions, not motives, must cause economic duress.

> Business compulsion is not established merely by proof that consent was secured by the pressure of financial circumstances, especially where the party claiming duress is experienced in business and not a novice, or by the fact that one party insisted upon a legal right and the other party yielded to such insistence. Consistent with this principle, it is recognized that the doctrine of "business compulsion" cannot be predicated upon a demand which is lawful, or upon doing or threatening to do that which a party has a legal right to do. . . .

Tennessee authorities are in accord with this statement. *See Dockery v. Estate of Massey*, 958 S.W.2d 346-348 (Tenn. Ct. App. 1997); *Jaffe v. Bolton*, 817 S.W.2d 1927 (Tenn. Ct. App. 1991); *McClellan v. McClellan*, 873 S.W.2d 350-352 (Tenn. Ct. App. 1993).

The evidence does not preponderate against the Trial Court's findings of fact. Tenn. R. App. P. 13(d). On that basis the Trial Court invoked the voluntary payment rule which holds that a voluntary payment, even though the person making the payment protests the amount the money so paid may not be recovered on the ground the claim was illegal. *Whitley v. Bry's*, 15 Tenn. App. 86 (1932).

In this case, the partners were experienced in business, knew the facts and circumstances and their rights, yet elected to pay the claimed amount. We conclude the voluntary payment rule is applicable. *See Standard Oil Co. v. Storage Co.*, 163 Tenn. 565-575 (1931).

Next, plaintiff argues that it is entitled to a credit for an insurance premium that the Chancellor failed to consider. An examination of the documents relating to this transaction reveal that an agreement between defendant and a third party which plaintiff relies upon did not establish a basis for recovery.

Finally, plaintiff argues that defendant did not comply with the terms and conditions in the mortgage note to enable her to accelerate the unpaid indebtedness and enforce the penalty provisions in the note for default. The Chancellor held that defendant had met the conditions required of her under the mortgage and the evidence does not preponderate against his finding. Tenn. R. App. P. 13(d).

For the foregoing reasons we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Bridgecourt Apartments Partnership.

_____
HERSCHEL PICKENS FRANKS, J.