IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 4, 2005 Session

## SHIRLEY RUSSELL, Ph.D., ET AL. V. MEHARRY MEDICAL COLLEGE

**Appeal from the Chancery Court for Davidson County**
**No. 03-2727-III     Ellen Hobbs Lyle, Chancellor**

_____

**No. M2004-01049-COA-R3-CV - Filed September 13, 2005**

_____

Plaintiff, a college professor, appeals the dismissal of her breach of employment contract action upon summary judgment. She was employed by Meharry Medical College for thirty-three (33) years but was not tenured because the tenure program, adopted in 1984, was never implemented. She is seeking entitlement to formal tenure, or de facto tenure. She also seeks damages, claiming she was entitled to but did not receive twelve (12) months notice her contract of employment would not be renewed. The trial court found plaintiff had not attained de facto tenure and had waived her claim for tenure. It also held plaintiff's employment contract entitled her to six (6) months notice her employment would not be renewed and she received the requisite notice. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., joined. PATRICIA J. COTTRELL, J., filed a concurring opinion.

John L. Norris and Christina Norris, Nashville, Tennessee, for the appellants, Shirley Russell, Ph.D., James Russell, Ph.D., Joel Trupin, Ph.D. and Steven Fredman, Ph.D.

Robert D. Tuke, Paul C. Ney, Jr., and W. Justin Adams, Nashville, Tennessee, for the appellee, Meharry Medical College.

### OPINION

Professor Shirley Russell, Ph.D., was employed by Meharry Medical College for thirty-three (33) years, starting in 1970, until the disputed termination of her employment in 2003. She served as Chair of the Department of Microbiology during much of her career at Meharry. She also served as Associate Dean for Research in the School of Dentistry and received numerous grants for research, including a "keloid" project she worked on for thirty years.

At the time Dr. Russell was hired, Meharry did not have a formal tenure policy. Fourteen years later, in 1984, Meharry adopted a tenure policy. Dr. Russell applied for full professor status

and tenure in 1994. She was granted full professorship; however, she received no response to her tenure request. Thus, her tenure request was not granted. Moreover, Dr. Russell did not apply for tenure again. Meharry announced a moratorium on tenure in 1996.[1]

Her thirty-three years of employment at Meharry was based upon a series of contracts. Each contract of employment was comprised of a "Faculty Appointment Agreement" and a "Faculty Compensation Agreement." Additionally, each contract was subject to the applicable personnel policies and Meharry's Policy on Appointment, Promotion, and Tenure, which were incorporated by reference.

In June of 2003, Meharry submitted to Dr. Russell an un-executed original of the standard one (1) year employment contract. If Dr. Russell found it acceptable, she was to execute it and return it for execution by official representatives of Meharry. However, prior to execution of the employment contract, Meharry rescinded the offer and removed Dr. Russell as Chair of the Microbiology Department. Shortly thereafter, a different twelve (12) month contract was submitted to Dr. Russell only to be withdrawn, like the previous one, before it was executed. Finally, a third contract was submitted to Dr. Russell, but this one was for a six (6) month term rather than twelve (12) months.

The third proposed contract was submitted to Dr. Russell on June 30, the term of which was to begin the next day, July 1, 2003, and end December 31, 2003. It was to be signed and returned to Meharry by July 1.[2] Concerned with the six (6) month contract term, Dr. Russell went straight to the office of the Dean to discuss the contract. After being advised the Dean was not available, Dr. Russell secured an appointment with the Dean for July 10, 2003, the earliest date the Dean was available. Being mindful of the July 1 deadline, Dr. Russell signed the six (6) month contract and submitted it to Meharry on July 1 with the notation it was signed under duress. The Dean rejected the contract and promptly returned it, unsigned, to Dr. Russell with notification it was rejected because of the duress notation. Furthermore, the Dean unequivocally informed Dr. Russell that she had but two choices, accept the contract as offered or, in the alternative, reject it. Shortly thereafter, Dr. Russell signed the six (6) month contract, without a claim of duress, and submitted it to the Dean. Meharry followed suit by executing the six (6) month contract.

Some two months later, in September 2003, Dr. Russell filed this action.[3] Following discovery, both parties filed motions for summary judgment. Dr. Russell sought partial summary judgment, contending the six (6) month expiration date, December 31, 2003, was invalid because it was contrary to Meharry's policy of one (1) year notice of nonrenewal. Meharry sought summary

---

[1]The lack of tenure appointments from 1984 through 2002 were attributed to budgetary concerns at Meharry.

[2]The faculty had been previously instructed to comply with the July 1 deadline or Meharry would treat their conduct as a resignation.

[3]Initially, four faculty members joined in the suit against Meharry, but two of the plaintiffs settled prior to a determination on the matter and Dr. Russell is the only party pursuing appeal.

dismissal of all claims contending the July 2003 contract of employment was valid and enforceable, the expiration of which was December 31, 2003, that Dr. Russell did not have tenure, de facto or otherwise, and by entering into the July 2003 contract of employment she waived any claims of tenure and/or other rights.

The trial court granted Meharry summary judgment and denied Dr. Russell's motion for partial summary judgment. The summary dismissal was based in principal part on three findings: Dr. Russell was not tenured; the December 31, 2003 expiration of the six (6) month nonrenewal contract entered into in July of 2003 was valid and enforceable; and Dr. Russell waived her claims of tenure and other contractual rights by entering into the six (6) month nonrenewal contract.

Dr. Russell appeals contending the trial court erred by dismissing all of her claims on summary judgment because material facts were in dispute.

## STANDARD OF REVIEW

The issues were resolved in the trial court upon summary judgment. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Advertising & Publishing Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

Summary judgments are proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd v. Hall*, 847 S.W.2d at 210; *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001); however, they are not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d at 695. Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mutual Automobile Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall*, 847 S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975). To be entitled to summary judgment, the moving party must affirmatively

negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

Issues as to interpretation and application of unambiguous contracts are issues of law, the determination of which enjoys no presumption of correctness on de novo appellate review. *Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001).

## DE FACTO TENURE

Dr. Russell contends she attained de facto tenure because she developed a legitimate expectation of job security and academic freedom afforded by tenure and therefore she could not be terminated without notice, cause and right of hearing and appeal. The trial court held the facts did not make out a case for de facto tenure. We agree with the trial court.

Tenure, in the general sense, provides assurance to an experienced faculty member that she may expect to continue in her academic position unless adequate cause for dismissal is demonstrated in a fair hearing, following established procedures of due process. *See Perry v. Sindermann,* 408 U.S. 593, 601 (1972). Tenure is not universal nor is it standardized. Each educational system has the autonomy to adopt its own unique tenure protocol. *Id.*

De facto tenure is considered the equivalent of tenure. It is afforded teachers who have held their position for a number of years provided they are able to show from the circumstances of this service they are entitled to job tenure, or the equivalent to tenure. *Perry,* 408 U.S. at 601. As the United States Supreme Court explained in *Perry*:

> A teacher . . . who has held her position for a number of years, might be able to show from the circumstances of this service – and from other relevant facts – that she has a legitimate claim of entitlement to job tenure. Just as this Court has found there to be a 'common law of a particular industry or of a particular plant' that may supplement a collective-bargaining agreement, *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 579, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409, so there may be an unwritten 'common law' in a particular university that certain employees shall have the equivalent of tenure.

408 U.S. at 601. De facto tenure may be found if the faculty member can prove a legitimate expectancy of continued employment based on the relations and understandings between the faculty member and the institution. *Id.* at 602. The existence of a formal code or policy governing the granting of tenure, generally, precludes a reasonable expectation of continued employment absent extraordinary circumstances. *Omlor v. Cleveland State University,* 543 N.E.2d 1238 (Ohio, 1989); *Edinger v. Board of Regents of Morehead State University*, 906 F.2d 1136, 1140 (6th Cir. 1990). While a formal tenure policy may preclude a non-tenured teacher from having a reasonable expectation of continued employment, the Sixth Circuit Court of Appeals in *Soni v. Board of*

-4-

*Trustees of the University of Tennessee* found circumstances that justified a deviation from that rule. 513 F.2d 347 (6th Cir. 1975). In *Soni*, the faculty member received verbal assurances of permanent employment from the head of his department, was allowed to participate in a retirement program only available to tenured faculty and voted on the tenure of other faculty members, all of which is conduct generally associated with tenure status. *Id.* at 350. Based upon these findings, the court concluded the university, through its course of conduct with Dr. Soni, created a reasonable expectation of future employment even in the face of a tenure policy. *Id.* at 351.

Meharry adopted a tenure program in 1984; however, it was never fully implemented. Moreover, an official moratorium of the inactive tenure program was announced in 1996. Dr. Russell was never officially considered for tenure at Meharry from the inception of the program in 1984 to 1996 when Meharry officially established the moratorium.

Dr. Russell only requested tenure review on one occasion after the tenure program was adopted in 1984. That request was submitted in 1994 along with her request to be classified as a full professor. She did not receive a response to her tenure request, yet she took no further action. She didn't write, she didn't call, and she didn't request a review or an appeal. She took no action after getting no response to her only request in 1994 until the filing of this action 7 years later.

Except for the longevity of her employment, there is no competent evidence in the record to establish that Dr. Russell had a reasonable expectation of continued employment. Indeed, the uncontradicted evidence supports the contrary expectation. This is due in significant part to her signing thirty-two (32) contracts of employment, each of which restates the fact that her employment was for a specific term, twelve (12) months or six (6) months. In pertinent part, the contracts stated the beginning and ending date of each finite term. Further, the contracts stated, "Unless tenured status has been obtained, the College assumes no obligation for continuing appointment after the period indicated in this agreement."

Though Dr. Russell's thirty-three (33) years of service to Meharry is admirable, longevity of service alone is not sufficient to support a de facto tenure claim. *Perry*, 408 U.S. at 603. Moreover, Dr. Russell's contention that the tenure program was inactive since its' implementation in 1984 is unpersuasive. More is required. Specifically, there must be evidence that Meharry did something to lead her to reasonably believe that her employment is permanent. *Edinger,* 906 F.2d at 1140. The record does not provide evidence that would support a finding that Meharry led Dr. Russell to believe her employment was permanent. Thus, summary dismissal of the de facto tenure claim was appropriate.

### THE JULY 2003 CONTRACT OF EMPLOYMENT

The trial court held the contract of employment the parties entered into in July of 2003 was valid, that Dr. Russell's term of employment was six (6) months, expiring December 31, 2003, and that Meharry had no obligation to continue Dr. Russell's employment beyond December 31, 2003.

Dr. Russell contends the July 2003 contract was signed under duress. She also contends the six-months provision is invalid because it conflicts with the school's Policy on Appointments, Promotions and Tenure which provides for twelve months notice on non-renewal.[4] We find both contentions to be without merit.

Duress

Dr. Russell's contention of duress is based upon the short period of time she was afforded to accept or reject the July 2003 contract, combined with her concern for the graduate students assigned to her and the continuity of her keloid project. The burden of proof on Dr. Russell in the trial court was to establish that she entered into the July 2003 contract under duress. The trial court concluded that she did not satisfy that burden. Specifically, the trial court found the facts were "not so outrageous as to state a genuine issue of material fact of duress." We find no error with the trial court's finding.

Duress is defined as an "unlawful restraint, intimidation, or compulsion of another to such an extent and degree as to induce such other person to do or perform some act which he is not legally bound to do, contrary to his will and inclination." *McClellan v. McClellan,* 873 S.W.2d 350, 352 (Tenn. App., 1993) (quoting *Johnson v. Ford*, 245 S.W. 531, 538 (Tenn.1922)). The alleged coercive event must be of such severity, either threatened, impending or actually inflicted, so as to overcome the mind and will of a person of ordinary firmness. *McClellan*, 873 S.W.2d at 352; *See also, Federal Deposit Ins. Corp. v. Ramsey,* 612 F.Supp. 326, 328 ( E.D. Tenn. 1985); *Fogg v. Union Bank*, 63 Tenn. 530, 535 (1830). To constitute duress, the danger must not only exist, but must be shown to have actually operated upon the mind, and to have constituted the controlling motive for the performance of the act sought to be avoided. *Wilkerson v. Bishop*, 47 Tenn. 24, (Tenn.1869).

In the briefest of terms, Dr. Russell complains that she was presented with a "take it or leave it" scenario. The evidence in the record establishes that she was informed, unequivocally, she could either sign the contract of employment as offered – without the notation of duress – or not.[5] The contract of employment Meharry offered Dr. Russell was a six (6) month extension of her full professorship at the same salary and the same terms and conditions as before, with two material exceptions. The only material differences between the contract at issue and those Dr. Russell had entered into for the past several years was the length of the term, six (6) months instead of twelve (12), and she was to serve as a full professor but not as the Chair of the Department.

Though Meharry's conduct toward Dr. Russell may have fallen significantly below the degree of respect a full professor of 33 years deserved, its conduct cannot be characterized as "unlawful. . . intimidation . . . of another to such an extent . . . as to induce [a] . . . person to do or perform some

---

[4]She also contends the contract is unenforceable because it is confusing. This is discussed later in the opinion.

[5]While Dr. Russell contends Meharry's conduct constitutes duress, it was little more than Meharry's less than courteous method of satisfying the six (6) month prior notice of non-renewal required by the 2002 Policy of Appointment, Promotion and Tenure.

act which [she] is not legally bound to do, contrary to his will and inclination." *McClellan,* 873 S.W.2d at 352 (quoting *Johnson*, 245 S.W. at 538). Nor does Meharry's conduct constitute a "coercive event . . . of such severity . . . so as to overcome the mind and will of a person of ordinary firmness." *McClellan*, 873 S.W.2d at 352; *see also Federal Deposit Ins. Corp. v. Ramsey* 612 F. Supp. 326, 328-329 (E.D. Tenn.1985) (finding defendant's subjective belief of pressure not sufficient to show unlawful intimidation or compulsion strong enough to overcome the will of an ordinary person); *Exum v. Washington Fire & Marine Ins. Co*, 297 S.W.2d 805, 809 (Tenn. App. 1955) (finding a man with an eighth grade education, taken without notice or aid of counsel to an office and accused of arson to collect insurance is sufficient coercion to constitute duress).

The trial court found Dr. Russell's evidence insufficient to constitute a dispute of fact concerning whether Meharry's conduct constituted duress. As a result of that finding, Dr. Russell has the burden on appeal to establish the evidence in the record preponderates against the trial court's findings. Tenn. R. App. P. 13(d). The evidence in the record does not preponderate against the trial court's finding.

## Term of the Contract

Dr. Russell contends the term of the July 2003 contract violates the 1984 Policy on Guidelines for Academic Freedom, Appointment, Promotion & Tenure of Faculty (Policy on Appointment, Promotion and Tenure), which required a one (1) year notice of nonrenewal.[6]

The trial court found that the 2002 Policy on Appointment, Promotion and Tenure, adopted in October of 2002, superseded the 1984 guidelines and that Section 8.4.2 of the 2002 Guidelines required only six (6) months notice.[7] It also held that the contract was for a term of employment of six (6) months, beginning July 1, 2003, ending December 31, 2003. The trial court was correct on both counts.

The contract expressly provided, "Unless tenured status has been obtained, [Meharry] assumes no obligation for continuing appointment after the period indicated in this agreement." As discussed below, Dr. Russell did not have formal tenure status and had not attained de facto tenure. Thus, Meharry had no obligation to continue Dr. Russell's appointment (employment) after the period indicated in the July 2003 contract of employment.

Like other faculty contracts of employment, the July 2003 contract of employment was subject to Meharry's Policy on Appointment, Promotion and Tenure. The 1984 Policy on

---

[6] There is argument as to whether, even if the 1984 Policy on Appointments, Promotion and Tenure applied, Dr. Russell would be entitled to twelve (12) months notice of nonrenewal. We do not reach that argument because of the finding that the 2002 Policy on Appointments, Promotion and Tenure superseded the 1984 version and thus applies to this case.

[7] Dr. Russell also contends she is not bound by the 2002 Policy on Appointments, Promotion and Tenure because she voted against the policy. While we find this contention to be novel, it is without merit.

Appointment, Promotion and Tenure, upon which Dr. Russell relies, was the effective policy from 1984 until October 2002, when Meharry adopted the 2002 Policy on Appointment, Promotion and Tenure. Rule 8.4.2 of the 2002 Policy provided in pertinent part, "notice of non-renewal shall be no less than six (6) months."

The July 2003 contract of employment expressly stated the term of employment ended December 31, 2003. Meharry had no obligation to continue Dr. Russell's appointment beyond the express term of the contract of employment. The 2002 Policy on Appointment, Promotion and Tenure required notice of non-renewal of no less than six (6) months, not twelve (12) months as Dr. Russell contends. Dr. Russell received the requisite notice. Thus, Dr. Russell's employment ended by contract on December 31, 2003 as the trial court held.

## WAIVER OF OTHER CLAIMS

The trial court held Dr. Russell waived her tenure as well as any other contractual claims, except for those arising under the July 2003 contract of employment, when she entered into the July 2003 contract of employment. We agree.

Waiver is defined as a voluntary or intentional relinquishment of a right. *American Home Assurance Co. v. Ozburn-Hessey Storage Co.,* 817 S.W.2d 672, 678 (Tenn. 1991); *Faught v. Estate of Faught,* 730 S.W.2d 323, 325 (Tenn. 1987); *Baird v. Fidelity-Phoenx Fire Ins. Co.,* 162 S.W.2d 384, 389 (Tenn. 1942). The intent necessary to form waiver may be either express or implied or may be inferred from or a legal result of conduct. *Faught,* 730 S.W.2d at 325.

Dr. Russell contends she did not knowingly waive any rights by entering into the 2003 contract of employment because the contract was confusing and misleading. As Dr. Russell contends, there is inconsistent if not confusing language in the contracts.[8] At best, the 2003 contract of employment is inartful; however, these deficiencies fail to support Dr. Russell's contention that she did not knowingly waive other rights when she entered into the contract.

Prior to entering into the 2003 contract, Dr. Russell was fully aware that other faculty members, including her husband, had previously received notice that Meharry was not renewing their six (6) month contracts that were to end December 31, 2003. Moreover, prior to entering into her six (6) month contract in July 2003, Dr. Russell spoke out in a faculty meeting regarding these issues and met with an attorney on behalf of faculty members who had received the six (6) month notice. Her prior knowledge of the six (6) month term of the contract is also evidenced by her immediate trip to the Dean's office to discuss the disputed six (6) month term.

---

[8]One of the more obvious errors in the contract appears under "Agreement Information" wherein the term is specified as beginning 07/01/03 and ending 12/31/03 and then directly below that it shows "YEAR 1 OF 1 YEAR APPOINTMENT." There are several other errors and inconsistencies which have little to no bearing on the issues.

Despite inconsistent, inartful language in the 2003 contract of employment, Dr. Russell was well aware that she was entering into a nonrenewal contract with Meharry with a term of employment that expired on December 31, 2003. Therefore, she knowingly waived any rights contrary to the stated term of the contract.

### IN CONCLUSION

The judgment of the trial court is affirmed and this matter is remanded with costs of appeal assessed against appellant, Dr. Shirley Russell.

_____
FRANK G. CLEMENT, JR., JUDGE