IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2003 Session

## E. MICHAEL HARRINGTON v. GRANT SMITH

**Appeal from the Chancery Court for Davidson County**
**No. 98-898-II     Carol McCoy, Chancellor**

---

**No. M2002-00840-COA-R3-CV - Filed February 26, 2003**

---

Defendant appeals a grant of summary judgment against him on a promissory note and an additional judgment against him for breach of contract.  We affirm the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., and DON R. ASH, SP. J., joined.

Helen S. Rogers, Nashville, Tennessee, for the appellant, Grant Smith.

Kent B. Thomas and J. Christopher Anderson, Nashville, Tennessee, for the appellee, E. Michael Harrington.

### OPINION

Grant Smith is a member of the Nashville Bar with many years of litigation experience, primarily in the area of United States copyright law relative to the music industry.  Dr. E. Michael Harrington is a professor of music at Belmont University who, in addition to his duties at the university, renders services as an expert witness in copyright cases involving music compositions. John A. Ascione is an attorney, formerly employed by and associated with Grant Smith, in the practice of copyright law.

The chronology of relevant events is critical to a proper analysis of this case.  Grant Smith first became acquainted with Dr. Harrington in 1993 while working on a copyright infringement lawsuit styled *Mote v. Cyrus*.  At that time, a young lady working in the office of Mr. Smith suggested that he make contact with Dr. Harrington as a potential expert witness.  Smith contracted with Harrington on an expert witness fee arrangement of $125 per hour.  Harrington rendered his services in the case, apparently in a satisfactory manner, and was promptly paid for those services.

John Ascione began working with Mr. Smith in 1989 as a law clerk. In October of 1992 he became an associate in Smith's law office. At some time after April of 1993, Everett A. Ellis retained Mr. Smith and Mr. Ascione to represent him in a copyright infringement case. He had written a song entitled "Lay Me Out By the Jukebox When I Die." In April of 1993, he heard a song written by Joe Diffie entitled "Prop Me Up Beside the Jukebox If I Die." He believed that Diffie had plagiarized his song and employed Messrs. Smith and Ascione on some form of contingent fee arrangement to represent him in an action for copyright infringement against Diffie along with other defendants involved in writing and marketing "Prop Me Up Beside the Jukebox If I Die." Grant Smith first met with Dr. Harrington relative to *Ellis v. Diffie* on October 6, 1995, and, thereafter, Harrington worked with both Smith and Ascione on the case. On January 29, 1996, Harrington forwarded an eight page letter with extensive enclosures to John Ascione opining that "Prop Me Up Beside the Jukebox If I Die" was more than substantially similar to "Lay Me Out By the Jukebox When I Die." Thereafter, suit was filed with Messrs. Smith and Ascione collaborating in preparation for trial with Dr. Harrington as an expert witness.

Although the strain in the personal relationship between Mr. Smith and Mr. Ascione dates back, as far as the record discloses, to early December of 1993; they continued to work together as the *Ellis* case progressed. Apparently, Mr. Smith did not come to an agreement with Dr. Harrington as to his fees, but relied on Mr. Ascione in this respect. Mr. Ascione left the office of Mr. Smith in June of 1996 to accept primary employment as counsel for Copyright Management, Inc., but he continued to work with Mr. Smith on pending cases, including *Ellis v. Diffie*.

On November 19, 1996, Dr. Harrington submitted a $9,400 invoice to Grant Smith for the doctor's accrued fees as an expert witness in *Ellis v. Diffie, et al.* This invoice discloses that Dr. Harrington was charging $200 per hour for his services and $2,000 a day for deposition time. The relationship between Mr. Smith and Mr. Ascione reached the breaking point in January of 1997 and they parted company with Mr. Smith taking over full control of *Ellis v. Diffie, et al*. Dr. Harrington received no response to the November 19, 1996 invoice. *Ellis v. Diffie, et al.* was set for trial in the United States District Court for the Middle District of Tennessee, beginning July 7, 1997. On June 24, 1997, Dr. Harrington forwarded a letter to Mr. Smith, together with an updated invoice. This letter provided, in part:

Dear Grant:

On November 19, 1996, I forwarded to you a statement of services rendered and payment due, with regard to work which I have previously performed, at your request, as an expert witness in the case, Ellis vs. Diffie, et al. As of today, I have received no payment from you for the work which I performed between October 1995 - November 1996.

Therefore, I feel it will be necessary, prior to the time I perform any further work in this case, that you send me a check in the amount of Eleven Thousand Four Hundred Dollars ($11,400.00). This amount represents Nine Thousand Four Hundred Dollars

($9,400.00) owed to me for work performed during the period October 1995 to November 1996, and Two Thousand Dollars ($2,000.00) for the court appearance which I am to make on July 8, 1997.

Dr. Harrington declined to testify at trial without payment in accordance with this letter and, on July 7, 1997, Grant Smith executed the promissory note in issue in this case in words and figures:

<u>PROMISSORY NOTE</u>

<u>      </u>July 7, 1997                                                                 $11,400.00

  For value received, receipt of which is herewith acknowledged, I, GRANT SMITH, herewith promises to pay to the order of E. MICHAEL HARRINGTON, D.M.A., his heirs, successors or assigns, the sum of ELEVEN THOUSAND, FOUR HUNDRED [$11,400.00] DOLLARS, together with interest at the rate of <u> 6% </u> per annum on or before August 20, 1997, (45 days) from the date of this Note, or otherwise upon demand by payee thereafter. This Promissory Note represents payment for services rendered as an Expert Witness in the case styled <u>Ellis vs. Diffie, et al</u>. Said payment shall be made in Nashville, Tennessee, in lawful United States currency.

The case was tried without a jury July 8 through July 11, 1997, with Dr. Harrington present all four days and actually testifying on July 9, 10 and 11.

On December 8, 1997, Judge Robert L. Echols filed his Memorandum Opinion taking note of the similarities between the two songs, but holding that Ellis had failed to carry his burden of proof that the defendant songwriters had access to a recording of "Lay Me Out By the Jukebox When I Die." The case was dismissed and Smith promptly filed an appeal.

As with most unsuccessful contingent fee ventures, a day of reckoning came relative to the expenses, including the expert witness fees of Dr. Harrington, and Mr. Smith declined to pay either the promissory note or the fees charged subsequent to the July 7, 1997 promissory note. Harrington filed suit in the instant case on March 23, 1998, seeking judgment on the July 7, 1997 promissory note and seeking judgment for $8,250 for services rendered between July 7, 1997 and July 11, 1997. The suit was filed by Smith's former associate, John A. Ascione, as attorney of record for Dr. Harrington.[1] On May 8, 1998, Smith filed an Answer and Cross-Complaint denying that he had requested Dr. Harrington's services in Ellis v. Diffie denying that he owed Dr. Harrington for professional services and asserting a conspiracy between Mr. Ascione and Dr. Harrington and, further, asserting that he was compelled to execute the July 7, 1997 promissory note under duress.

---

[1] This representation in obvious conflict with Ascione's former employment is possible the most disturbing fact in this appeal. However, since this appeal concerns the validity of the note and the propriety of the expert fees, issues concerning the propriety of Mr. Ascione's representation must await due consideration with another forum.

By Agreed Order of November 12, 1998, Mr. Ascione withdrew as counsel for Dr. Harrington and Honorable Beth C. Baggett filed her Notice of Appearance as the doctor's attorney on June 22, 1999.

On May 17, 1999, the United States Court of Appeals for the Sixth Circuit rendered its judgment affirming the district court in *Ellis v. Diffie*. In this opinion, the court affirmed the trial court on the basis of the "access" question and in the course of the opinion observed that: "Neither party contests the factual finding of substantial similarity on appeal." *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999).

The parties filed cross-motions for summary judgment which came on to be heard before the court on March 30, 2001. On April 24, 2001, the chancellor filed her order granting the plaintiff's Motion for Summary Judgment, holding:

> Upon consideration of the motions, the responses thereto, affidavits, exhibits, arguments of counsel, and the entire record, the court finds that there are no genuine issues of material fact and concludes that the plaintiff is entitled to judgment as a matter of law. In accordance with Rule 52 of the Tennessee Rules of Civil Procedure, the Court finds the undisputed facts to be as follows:
>
> 1.      The promissory note, attached as Exhibit A to the complaint, was drafted, signed, and presented to the plaintiff, E. Michael Harrington ["Dr. Harrington"], by the defendant, Grant Smith ["Smith"] on July 7, 1997. [G. Smith Depo. p. 5, lines 9-16].
>
> 2.      The services rendered by Dr. Harrington, as referenced in the promissory note, were associated with his work as an expert in a lawsuit filed in the United States District Court for Middle District of Tennessee styled, Everett A. Ellis v. Joe Diffie, et al., Civil Action No. 3-95-0849. [Promissory note; Exhibit A. to Complaint].
>
> 3.      There is no evidence that Smith was under any duress when he gave Dr. Harrington the promissory note.
>
> 4.  Smith has not paid Dr. Harrington the amount of the promissory note. [G. Smith Depo. p. 13, lines 11-15].
>
> 5.      Smith gave Dr. Harrington the promissory note to induce Dr. Harrington to testify at the Ellis v. Diffie trial. [G. Smith Depo. pg. 46, lines 20-25; pg. 47, lines 1-2].
>
> 6.      Dr. Harrington assisted Smith at the Ellis v. Diffie trial as Smith's expert witness. [G. Smith Depo. pg. 31, lines 1012].

-4-

7. On July 7, 1997, after presenting Dr. Harrington with a promissory note, Smith and Dr. Harrington prepared several hours for trial. [Harrington Affidavit].

8. Dr. Harrington completed all of the work requested by Smith in final preparation for trial. [G. Smith Depo. pg. 31, lines 4-12].

9. Dr. Harrington testified various times on the remaining three days of the Ellis v. Diffie trial. [Harrington Affidavit].

10. Smith has not paid Dr. Harrington for his assistance at the Ellis v. Diffie trial. [G. Smith Depo. pg. 20, lines 11-14].

11. The record contains no evidence that Dr. Harrington conspired with anyone else to commit an unlawful act or to engage in a lawful act by unlawful means.

Based upon the foregoing facts, the Court concludes that the promissory note, attached as Exhibit A to the complaint, is valid and enforceable against the defendant, and Dr. Harrington is entitled to be paid, by the defendant, the full amount owed under the terms of the promissory note.

The Court further finds that in addition to the sums owed to the plaintiff under the promissory note attached as Exhibit A to the complaint, the plaintiff is also entitled to recover from the defendant compensation for the work of the plaintiff on July 9, 10, and [11], 1997, in an amount to be determined at an evidentiary hearing.

It is therefore, ORDERED that the motion for summary judgment filed by the plaintiff be and is hereby granted. It is further ORDERED that the plaintiff be and is hereby awarded and shall recover from the defendant a judgment in the amount of $11,400.00, the principle amount due under the promissory note attached as Exhibit A to the complaint, together with interest at the rate of 6% per annum from the date payment was due through the date of payment, all in accordance with the terms of the note. It is further ordered that the plaintiff shall recover from the defendant a judgment in an additional amount, to be determined at an evidentiary hearing, as compensation for the plaintiff's work on July 9, 10, and 11, 1997. It is further ORDERED that the counterclaim of the defendant against the plaintiff be and is hereby dismissed.

The case then came on to be heard on February 21, 2002, to determine the amount of money owed to Mr. Harrington for his work as an expert witness in the *Ellis* case from July 7 through July 11, 1997. Dr. Harrington and Mr. Smith testified, and at the conclusion of the hearing the court found as follows:

THE COURT: I have listened to the proof and I have read the letters that have been tendered.

It is correct that Mr. Harrington performed the work that he was requested to do. He did appear for the times that are reflected on the statement.

Whether he appeared at the request of Mr. Smith, the Court finds that with regards to the activities on July 7 and July 8, that was at the request of Mr. Smith and meeting with Mr. Smith and in preparing for his testimony.

With regards to the Court appearances, it is correct that the first day of trial Mr. Harrington did not charge a flat per diem for July the 8th. He did charge a flat per diem for Court appearances on the 7th - - excuse me, July 9th, July 10th and July the 11th.

Testimony of Mr. Harrington and Mr. Smith is that Mr. Harrington testified on the afternoon of the July the 9th and again the morning of July the 10th and in rebuttal on July the 11th, that he was on call during that entire time, and accordingly, he is awarded his per diem for those three days.

Total amount is 6,250 as requested is found to be reasonable and for services rendered. I need an Order to that effect.

On March 7, 2002, the trial court entered its Final Order holding, in pertinent part, as follows:

On February 22, 2002, an evidentiary hearing was held to determine the compensation due to the plaintiff for trial work he completed as an expert witness for the defendant. At the conclusion of that hearing, upon consideration of the witnesses' testimony, exhibits, arguments of counsel, and the entire record, the court announced its determination that the plaintiff is entitled to an amount of $6,250.00 for trial work he completed for the defendant on July 7-11, 1997.

It is therefore, ORDERED, ADJUDGED, and DECREED that the plaintiff be and is hereby awarded and shall recover from the defendant a judgment in the amount of $6,250.00 for trial work the plaintiff completed for the defendant on July 7-11, 1997. This award is in addition to the previous judgment awarded the plaintiff for $11,400.00, the principal amount due under the promissory note attached as Exhibit A to the complaint, together with interest at the rate of 6% per annum from the date payment was due through the date of payment, as previously awarded by this court in its April 24, 2001, order which is incorporated herein by reference.

Costs of this cause are taxed to the defendant, for which execution may issue.[2]

Grant Smith timely appealed challenging the court's determinations regarding the validity of the promissory note of July 7, 1997, and the liability of Mr. Smith for the work of Dr. Harrington for the

---

[2] The Final Order indicates that this hearing was held on February 22, 2002. The testimonial transcript discloses that the hearing was February 21, 2002. The discrepancy is not material to the case.

period July 7 through July 11, 1997. The case is before this Court on review of the trial court's summary judgment in favor of Harrington. The familiar standard of review in such cases is *de novo* on the record with no presumption as to the correctness of the trial court judgment. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). After such review, if a dispute exists as to material facts or if there is uncertainty as to whether there may be such a dispute, summary judgment is improper as the issue is one for the trier of fact and not the trier of law. *Evco Corp. v. Ross*, 528 S.W.2d 20, 24-25 (Tenn. 1975).

Since the amount of damages recoverable by Dr. Harrington for work on July 7 through July 11, 1997 involved factual issues, appellate review under T.R.A.P. Rule 13(d) is *de novo* with a presumption that the trial court's findings of fact are correct. This presumption is overcome only if the appellate court finds that the evidence preponderates against such findings. *Foster v. Bue*, 749 S.W.2d 736 (Tenn. 1988); *Allstate Insurance Co. v. Wilson*, 856 S.W.2d 706 (Tenn. Ct. App. 1992).

It is undisputed that the promissory note of July 7, 1997 was executed by Grant Smith, has matured, and has never been paid. Smith asserts in defense that he executed the note under duress. The alleged duress stems from Dr. Harrington's refusal to testify at the fast-approaching trial until Smith paid the entire amount due, including the aforementioned $2,000 of anticipated testimony on July 8, 1997. The Supreme Court of Tennessee explained the common-law rule as to duress in *Johnson v. Ford*, 245 S.W. 531 (Tenn. 1922). Said the court:

> * * * The strictness of the common-law rule touching the matter of duress has been much relaxed in the development of the law. Originally "duress" meant only duress of the person, and nothing short of such duress, amounting to a reasonable apprehension of imminent danger to life, limb or liberty, was sufficient to enable the party to recover back the money paid. Subsequently, in keeping with the principles of equity and good morals, the doctrine was extended so as to recognize duress of property as a sort of moral duress, which might, equally with the duress of the person, entitle the party to recover back money paid under its influence.
>
> Under this view, it is said the real and ultimate fact to be determined in every case is whether or not the party paying the money really had a choice, that is, whether he had his freedom of exercising his will. Numerous authorities declare that if one is compelled by business necessity to surrender to the constraint involved in the *unlawful demand* and make the payment, moral duress appears. In other words, in such circumstances, it may be found as a fact that the party paying has not had his freedom of exercising his will and paid the money under moral duress, in which event, if it is against equity and good conscience for the money to be withheld from plaintiff, it may be recovered.

*Johnson*, 245 S.W., 540 (Tenn. 1922)(emphasis added)(quoting *Brown v. Worthington*, 142 S.W. 1082 at 1084 (Mo.App. 1912)).

"Duress" as so defined has no application in this case, since the demand made by Dr. Harrington was not an unlawful demand. Whatever may have been the agreement or lack of agreement between Smith and Ascione on the one hand and Harrington on the other, Mr. Smith knew as early as November 19, 1996, when Dr. Harrington sent to Mr. Smith his first invoice, that those charges were in fact $200 per hour and $2,000 per diem for testimony. Whatever may have been the communication between Smith and Ascione concerning this invoice and the fees charged therein, Smith neither paid any part of the invoice nor communicated any dissatisfaction with it between November 19, 1996 and June 24, 1997, when he received Dr. Harrington's second invoice demanding payment prior to testimony. Harrington made no unlawful demand for fees due and owing to him. In the seven months between the November 19, 1996 letter and the June 24, 1997 letter, Smith had not disputed those charges. It is no more duress for Harrington to force Smith to pay the unpaid invoices as a condition to giving his testimony than it would be for Smith to be able to compel Harrington to give his testimony before making payment to him of what was already due. The actions of Dr. Harrington are not ". . . an unlawful restraint intimidation or compulsion of another to such an extent and degree as to induce such other person to do or perform some act which he is not legally bound to do, contrary to his will and inclination." *Jaffe v. Bolton*, 817 S.W.2d 19, 27 (Tenn. Ct. App. 1991) (quoting *FDIC v. Ramsey*, 612 F.Supp. 326 (E.D. Tenn. 1985). See, e.g. *Johnson v. Ford*, 147 Tenn. 63, 245 S.W. 531 (1922).

> Ordinarily, it does not constitute duress to threaten to do what one has a legal right to do, and it has been declared that it is not blackmail or extortion for a person to claim what he believes due him . . . In order to constitute duress it has been held that the threatened action must be unlawful or wrongful, even though the threat exerts such pressure as to preclude the exercise of free-judgment, . . . *United Pacific Life Ins. Co. v. Garrison, et al.*, No. 02A01-9208-CV-002281993 WL 330995 (Tenn. Ct. App. Sept. 1, 1993). See also C.J.S. Threats & Unlawful Communications § 27 (1954).

Mr. Smith attempts, to no avail, to dissociate himself from the obligation to Dr. Harrington. In deposition of May 15, 2000, Mr. Smith testified:

> Q.    Was Mr. Ascione in charge of doing the day-to-day management on that file?
> A.    Yes, he was.
> Q.    Did you oversee his work?
> A.    Yes, I did, to the extent that I knew it was going on. I oversaw everything he did, tried to.
> Q.    So as I understand it, you knew that Dr. Harrington had provided an opinion in this case; is that correct?
> A.    I sure did.

Q.      You knew that Mr. Ascione had made some sort of fee arrangement with Dr. Harrington; is that correct?

A.      I certainly thought so.  The suit was not filed - - I'm sure suit was not filed until after the opinion letter was rendered because had the opinion letter had been unfavorable I would not have filed suit or we would not have filed suit.  Mr. Ascione and I jointly filed suit.

Q.      So who eventually used Dr. Harrington's opinion and testimony to litigate this trial?

A.      I did.  Didn't have any choice.

Whatever may have been the relationship between Smith and Ascione as to other cases in their office, as to *Ellis v. Diffie*, by Smith's own testimony, Ellis was his client and he associated Ascione in the case and assigned to Ascione the responsibility for procuring expert testimony. Furthermore, the duties and responsibilities of Mr. Smith and Mr. Ascione in the preparation and trial of *Ellis v. Diffie, et al.* is not a matter that is before the Court; the duties and responsibilities of Mr. Smith as to Dr. Harrington are established by the record and undisputed.  Mr. Smith was responsible for his client's matter and therefore responsible for securing payment of the expert witness.  The fact that his associate counsel, Mr. Ascione, may have responsibilities to Mr. Smith is immaterial to the determination of these issues between Dr. Harrington and Mr. Smith.

There are no material facts in dispute in this case and the trial court was correct in granting summary judgment to the plaintiff, both as to the promissory note and as to liability for the work done by Dr. Harrington July 7 through July 11, 1997.  After the February 21, 2002 hearing concerning the amount due to Dr. Harrington for work performed between July 7 and July 11, 1997, the trial court determined that he was entitled to $6,250.  This finding of fact is presumed to be correct unless the evidence preponderates against it.

The trial court found that it is undisputed that in the trial of *Ellis v. Diffie, et al.*, Dr. Harrington testified twice in the case in chief for Ellis (July 9 and July 10, 1997) and once in rebuttal (July 11, 1997).  He charged $2,000 per day in per diem which the trial court found to be reasonable and in accordance with the contractual arrangements between the parties. The evidence does not preponderate against the action of the trial court in this respect.

One problem is evident from the transcript of the hearing of February 21, 2002.  The November 19, 1996 invoice from Dr. Harrington was for $9,400, covering the period October 1995 to November 1996.  The June 24, 1997 second invoice for $11,400 included:

For The Court Appearance On July 8, 1997:

Flat Fee = $2,000.00

Sub-Total This Section = $2,000.00
Total Due = $11,400.00

On July 23, 1997, following the trial in *Ellis v. Diffie, et al.*, Dr. Harrington submitted to Mr. Smith his final invoice for services rendered, including an invoice for his work for the period July 7 through July 11, 1997.  As to this period, the invoice states:

For The Period 07/07/97-7/08/96: (sic)
a.  [2 hour, 15 meeting with Grant re trial; 7/7/97];
b.  [3 hours preparing material four court; 7/7/97];
c.  [6 hours reviewing material and preparing for court; 7/8/97];
      Total Hours = 11 hours, 15 minutes
      11.25 hours x $200.00/hour = $2,250.00
                    Sub-Total this Section = $2,250.00

For the Court Appearances on July 9, 10, 11, 1997:
a.  [Court appearance; 7/9/97]
b.  [Court appearance; 7/10/97]
c.  [Court appearance; 7/11/97]
      Flat Fee = $2,000.00/day
      3 days x $2,000.00/day = $6,000.00
                    Sub-Total This Section = $6,000.00

In the original Complaint and in conformity to this July 23, 1997 invoice, Dr. Harrington sued for a total of $8,250 for his work during the period July 7 through July 11, 1997.

The record is clear that Dr. Harrington did not testify on July 8 but that his first testimony in the case was on July 9, 1997.  Dr. Harrington testified:

> MS. BAGGETT:     I simply asked if - - well, I'll just repeat it to you, Dr. Harrington.  The entry on your letter C which lists your work on July the 8th, I asked you if that was the first day of trial.
> THE WITNESS:     Yes, it was.
> Q.     You were not required to testify in Court that day.
> A.     That's correct.
> Q.     If you'll drop down to the next section which is listing the work that was completed on July the 9th, 10th and 11th, 1997, you have listed letter A, B and C and entries for each day.  Could you outline those charges for the Court?
> A.     Yes.  The first one was for the first appearance in Court, it was to be $2,000 a day - - I'll pause - - that first one was July 9th has been - - the Court asked or ordered Grant Smith to pay that as part of the previous thing.  That's not a part of this $6,250.  The next two are for the second and third days I testified, the $2,000 a day.
> Q.     Just to clarify, the $2,000 that you're charging for July the 9th was incorporated into the promissory note that the Court has already ordered Mr. Smith to pay you; is that correct?

So you're not seeking $2,000 for the 9th, July the 9th.

A.    That's correct, I'm not.

In determining the $6,250 recovery for work performed between July 7 and July 11, 1997, the trial court, in its findings stated:

> Whether he appeared at the request of Mr. Smith, the Court finds that with regards to the activities on July 7 and July 8, that was at the request of Mr. Smith and meeting with Mr. Smith and in preparing for his testimony.
> With regards to the Court appearances, it is correct that the first day of trial Mr. Harrington did not charge a flat per diem for July the 8th. He did charge a flat per diem for Court appearances on the 7th - - excuse me, July 9th, July 10th and July the 11th.
> Testimony of Mr. Harrington and Mr. Smith is that Mr. Harrington testified on the afternoon of the July the 9th and again the morning of July the 10th and in rebuttal on July the 11th, that he was on call during that entire time and, accordingly, he is awarded his per diem for those three days.
> Total amount is 6,250 as requested is found to be reasonable and for services rendered. I need an Order to that effect.

Thus, the trial court approved the fees in the amount of $2,250 for the pre-testimony work of Dr. Harrington on July 7 and July 8, 1997. The invoice includes and the Complaint seeks $6,000 for three days of testimony on July 9, 10 and 11, 1997. Dr. Harrington then testifies correctly that the $2,000 charged in the June 24, 1997 invoice for his forthcoming testimony on July 8, 1997 is included in the July 7, 1997 promissory note and that he is only seeking recovery for his testimony of July 10 and July 11, 1997. If the findings of the trial court as stated following the February 21, 2002 hearing are taken literally and applied to the July 23, 1997 invoice, the recovery by Dr. Harrington would be $8,250 rather than $6,250. Both the findings of the chancellor at the conclusion of the February 21, 2002 hearing and the findings contained in the Final Order of March 7, 2002 limit the recovery to $6,250. The confusion results in the obviously mistaken oral statement by the chancellor at the end of the February 21, 2002 hearing, which purports to approve both the pre-testimony fees for work done on July 7 and 8, 1997, and three days per diem for July 9, 10 and 11, 1997. The resulting judgment, however, entered on March 7,1 997, when considered in the light of the testimony of Dr. Harrington at the February 21, 2002 hearing, clearly reflects no duplication between sums contained in the promissory note of July 7, 1997, and the judgment for work accomplished thereafter. The $6,250 judgment reflects $2,250 for pre-testimony work on July 7 and 8, 1997, coupled with $2,000 per day per diem for the testimony of July 10 and 11, 1997, with the correct total being $6,250.

While the actions of Mr. Ascione and Dr. Harrington in becoming attorney and client with Mr. Ascione bringing this suit on behalf of Dr. Harrington obviously rubbed salt into the wounds of Mr. Smith, the record before the Court contains no material evidence to support the allegations in the counter-claim of a conspiracy between Dr. Harrington and Mr. Ascione.

The judgment of the trial court in granting summary judgment to the plaintiff on the July 7, 1997 promissory note for $11,400 plus interest is affirmed. The grant of summary judgment relative to liability for the work performed by Dr. Harrington from July 7 through July 11, 1997 is likewise affirmed. The evidence does not preponderate against the findings of the chancellor providing for a recovery of $6,250 for the work performed by Dr. Harrington between July 7 and July 11, 1997. This judgment is accordingly affirmed.

The case is remanded to the trial court for such further proceedings as may be necessary. Costs of the cause are assessed against the appellant, Grant Smith.

_____
WILLIAM B. CAIN, JUDGE