IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 16, 2005 Session

## JOHN D. MCMAHAN v. KATHERINE C. MCMAHAN

**Appeal from the Chancery Court for Hamilton County**
**No. 04-0010     John F. Weaver, Chancellor**

**No. E2004-03032-COA-R3-CV  - FILED DECEMBER 5, 2005**

This matter finds its genesis in a divorce action filed by John D. McMahan ("Husband") against his wife, Katherine C. McMahan ("Wife"). The parties agreed to mediate their differences. At the time of the mediation, the parties ostensibly reached an agreement as to the division of their property and spousal support. Their agreement was reduced to longhand and, in that form, signed by both parties. Shortly after the mediation, Wife repudiated the writing, arguing that it was not a binding agreement because of (1) duress; (2) Wife's lack of mental capacity to enter into a contract; and (3) the parties' intention that the longhand document would be followed by a more formal document in which the parties would express their final agreement. Husband filed a motion to enforce the document in longhand form. The trial court granted Husband's motion, holding that the writing was a valid and enforceable contract. Wife appeals. Husband seeks damages for a frivolous appeal. We affirm the judgment of the trial court, but decline to award damages for a frivolous appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

John P. Konvalinka, Chattanooga, Tennessee, for the appellant, Katherine C. McMahan.

Donald Capparella, Nashville, Tennessee, for the appellee, John D. McMahan.

**OPINION**

I.

During the pendency of Husband's divorce action, the parties agreed to mediation. The mediation was held at the office of Wife's attorney. It consumed approximately seven hours. As a result of the mediation, a five-page, handwritten mediation agreement was prepared with the input of the parties and their counsel. The agreement contains 32 paragraphs pertaining to property

division and spousal support. Before the parties and their counsel left the attorney's office, each page of the document was either signed or initialed by both Husband and Wife. It was also signed by the Rule 31[1] mediator, Sarah Y. Sheppeard ("the mediator"). She prepared a report with respect to the mediation ("the mediator's report") and submitted it to the trial court. The mediator's report indicates that both parties appeared and participated in good faith in the mediation and that the case was settled in the mediation process.

Shortly after the mediation, Husband's attorney drafted a final judgment of divorce and a marital dissolution agreement ("the drafted MDA"). Husband signed the two documents. His attorney then forwarded the signed documents to Wife's attorney for Wife's approval and signature. Wife refused to sign the documents. Thereafter, Husband filed a motion in the divorce case to enforce the mediation agreement.

In her response to Husband's motion, Wife, who acknowledges that she is herself an experienced Rule 31 mediator, challenged the validity of the handwritten document on the following grounds: (1) Husband's *motion* was not the proper "vehicle" to enforce the agreement; (2) Wife was under duress and lacked sufficient mental capacity to enter into a binding contract at the time the handwritten document was drafted and signed; and (3) the handwritten document was not intended by the parties to be the final document but was contingent upon the parties' approval of a formal marital dissolution agreement and the trial court's approval. With respect to the final point, Wife contends that either party could repudiate the agreement at any time prior to the court's approval of same.

In November, 2004, the trial court held an evidentiary hearing on Husband's motion. Several witnesses testified, including both parties and the mediator. The mediator testified that Wife participated in the mediation process and appeared to understand what was going on. The mediator stated that Wife did not seem confused or mentally incapacitated. In its memorandum opinion filed November 29, 2004, the trial court held "the mediated settlement agreement to be binding and enforceable." In addressing Wife's defenses to enforcement of the handwritten document, the trial court reasoned that: (1) Wife waived any procedural objection regarding Husband's motion by failing to raise her objection at the evidentiary hearing; (2) Wife failed to prove by a preponderance of the evidence that she was under duress or lacked sufficient mental capacity to enter into a binding contract; and (3) no evidence established that the handwritten document was contingent upon or even subject to the trial court's approval. Wife appeals the trial court's enforcement of the mediation agreement. Pursuant to its memorandum opinion, the trial court subsequently held a hearing regarding "all remaining issues" between the parties. In an order filed in March, 2005, the trial court declared both parties entitled to a divorce pursuant to Tenn. Code Ann. § 36-4-129(b).[2]

---

[1] Rule 31, Rules of the Supreme Court of the State of Tennessee.

[2] Tenn. Code Ann. § 36-4-129(b) (2005) provides the following:

> The court may, upon stipulation to or proof of any ground for divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce, declare the parties to be divorced, rather than awarding a divorce to either party alone.

II.

Wife raises the following five issues for our review: (1) whether the trial court erred in acting upon Husband's *motion* to enforce the mediation agreement; (2) whether the trial court erred when it enforced the mediation agreement in light of Wife's withdrawal of her consent to the agreement prior to the trial court's entry of a final judgment; (3) whether the trial court erred by finding that the parties intended the mediation agreement to be a final binding document; (4) whether the trial court erred when it determined that Wife failed to establish the defenses of lack of mental capacity and duress; and (5) whether the trial court erred in allowing and considering the testimony of the mediator. In his brief, Husband seeks an award of damages for a frivolous appeal.

III.

Our review of this case is *de novo* upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We accord no such presumption to the trial court's conclusions of law. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993).

IV.

Wife first contends that Husband failed to follow the proper procedure for enforcement of the subject document. Wife argues that the trial court should have required Husband to file a separate lawsuit or amend his petition to assert a claim of accord and satisfaction before considering the enforceability of the agreement. The trial court responded to this argument by holding that Wife waived her objection to Husband's motion by failing "to raise [it] at the hearing or to object to the evidentiary hearing going forward."

Wife contends that the trial court erred in holding that she waived her objection to the enforcement mechanism selected by Husband. She points to the fact that her written response to Husband's motion, which response was filed the morning of the motion hearing,[3] appropriately and sufficiently raised the issue. Therefore, according to Wife, the trial court should have addressed the merits of her objection. We acknowledge that Wife's written response properly raised and addressed her objection; however, she failed to pursue her objection at the hearing. On the contrary, she participated fully in the hearing without stating a word in opposition to Husband's choice of a *motion* as the appropriate enforcement mechanism. There is nothing in the record reflecting that she indicated to the trial court *at the hearing* that she was relying upon her written defense to the procedure utilized by Husband. Wife neglected to prevent or nullify any harmful effect of the trial court's failure to rule on her written defense. *See* Tenn. R. App. P. 36(a). We are of the opinion that Wife, by her failure to pursue this issue at the hearing, waived it. As previously noted, she

---

[3] The hearing on Husband's motion occurred on November 1, 2004. In its memorandum opinion, the trial court stated that Wife's responsive pleading was not filed with the clerk until three days after the motion hearing. The record reflects otherwise. Wife's response is clearly stamped filed on November 1, 2004 at 9:15 a.m.

participated fully at the hearing. She introduced testimonial evidence. She filed exhibits with the court. Yet, she never orally raised the procedural issue upon which she now seeks relief. We are not required to grant relief to a party "who fail[s] to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." *Id.* Accordingly, we decline to reverse the trial court on this issue.

Even if we were to find that the trial court should have addressed this issue, nevertheless we would be compelled to find that it is without merit. Wife bases her position with respect to this procedural issue primarily on the Supreme Court's holding in *Covert v. VonHardemutt*, 53 S.W. 730 (Tenn. 1899). *Covert,* decided more than a century ago, involved a personal injury suit against several defendants. *Id.* The defendants eventually moved the trial court to dismiss the case, asserting that the plaintiff's claim had been compromised and settled. *Id.* The defendants presented a receipt documenting the satisfaction of the cause of action. *Id.* The plaintiff resisted the motion, claiming that the receipt was unfairly obtained *Id.*, at 731. The trial court considered the evidence presented by both sides, sustained the defendants' motion, and dismissed the plaintiff's lawsuit. *Id.* The High Court reversed, stating that:

> [w]hen the motion to dismiss was resisted, and the validity of the papers on which it was based was disputed, the motion should have been overruled, and the defendants left to their right to set up the matter of accord and satisfaction by proper plea. It was not allowable for the court to hear testimony, and decide an issue of disputed facts upon mere motion.

*Id.; see also **Aiken v. Taylor**,* 62 S.W. 200 (Tenn. App. 1900).

We do not believe *Covert* is authority for Wife's position in this case. It was decided at a time when rules pertaining to pleadings were very technical and rigidly enforced. With the adoption of the Rules of Civil Procedure, we have moved beyond the rigidity of *Covert*.

The parties do not cite, nor have we found, any authority specifically sanctioning a *motion* as the proper vehicle for enforcement of a mediation agreement. There are, however, cases where a motion has been used, without objection, to enforce such an agreement. *See **Ledbetter v. Ledbetter**,* 163 S.W.3d 681, 683 (Tenn. 2005); ***Myers v. Myers***, No. E2004-01362-COA-R3-CV, 2005 WL 936925, at *1 (Tenn. Ct. App. E.S., filed April 22, 2005), *perm. app. denied*, October 24, 2005; ***Persada v. Persada***, No. E2002-00397-COA-R3-CV, 2002 WL 31640564, at *1 (Tenn. Ct. App. E.S., filed November 22, 2002). These cases all address situations in which a divorcing couple submitted to mediation and arguably reached a mediation agreement as to property and support rights, followed thereafter by an attempted repudiation by one of the parties. We can think of no reason why a motion would not be a proper method of enforcing a settlement reached through the mediation process.

-4-

V.

Wife next attacks the validity and enforceability of the mediation agreement by asserting that her repudiation of the agreement prior to the trial court's entry of judgment is sanctioned by case law. She insists that the Supreme Court's decision in **Harbour v. Brown**, 732 S.W.2d 598 (Tenn. 1987), is authority for her contention that she could withdraw her consent in this case. We disagree. In **Harbour**, the parties reached a settlement on the day of trial. **Id.** at 599. They advised the court that they had settled their case, but did not announce the *terms* of their settlement. **Id**. They told the court that they would submit an order of compromise and dismissal. **Id.** Shortly thereafter, one of the parties withdrew his consent to the settlement. **Id.** The trial court nonetheless entered an order dismissing the case with prejudice. **Id.**

The Supreme Court found the trial court's dismissal to be in error, holding that a *consent* judgment could not be rendered where one of the parties to the agreement withdrew his consent and communicated that fact to the trial court. **Id.** As the Court explained, "[t]he power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement receives the sanction of the court or is rendered and promulgated as a judgment." **Id.** (quoting 49 C.J.S. *Judgments* § 174(b)). The High Court held that, until the consent judgment is entered by the court, either party could repudiate the agreement because of "an actual or supposed defense to the agreement." **Id.**, at 600.

The **Harbour** rule dealing with consent judgments is clear. A court may not enter a consent judgment based upon an agreement of the parties when the *terms* of the agreement are not announced to the court as a consent judgment and when one of the parties repudiates the agreement prior to the entry of the judgment. The instant case, however, does not involve such a factual scenario. "Until approved by the courts, a mediated agreement is essentially contractual in nature." **Ledbetter**, 163 S.W.3d at 685 (citing **Envtl. Abatement, Inc. v. Astrum R.E. Corp**, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000)). *See also* **Harbour,** 732 S.W.2d at 600 (acknowledging that, though a consent judgment could not be entered once a party has repudiated the agreement, the agreement may still be a "binding contract, subject to being enforced as other contracts."); **Myers**, 2005 WL 936925, at *3 (holding the parties' signed and written mediation agreement to be an enforceable contract because the repudiating party failed to prove fraud, mistake, duress, or any other ground for invalidating the contract). Where parties have reached a mediated agreement, we have consistently applied the principles of contract law to determine whether, based upon that agreement, a judgment may be entered in a case. **Persada**, 2002 WL 31640564, at *2. Wife's reliance on **Harbour** is misplaced. The trial court could not enter a consent judgment based upon the mediated agreement after her repudiation of the agreement, but it could, as it did, enforce a contract between the parties.

VI.

Wife contends that the trial court erred in holding that the handwritten document was a valid contract. She argues that the parties never reached a meeting of the minds with respect to the finality of the document. Basically, she argues that the mediation agreement is unenforceable because she

never intended the signed agreement to be a final and binding contract. Fundamental principles of contract law are applicable here. It is well-settled that a valid and enforceable contract requires a meeting of the minds between the contracting parties as to the essential terms of the agreement. ***Higgins v. Oil, Chemical and Atomic Workers Int'l Union, Local # 3-677***, 811 S.W.2d 875, 879 (Tenn. 1991) ("While a contract may be either expressed or implied, written or oral, it must result from a meeting of the minds of the parties in mutual assent to the terms. . . .") (quoting ***Johnson v. Central Nat'l Ins. Co.***, 210 Tenn. 24, 34-35, 356 S.W.2d 277, 281 (1962)). In determining whether or not to construe an instrument as a binding contract,

> [t]he primary test as to the actual character of a contract is the intention of the parties, to be gathered from the whole scope and effect of the language used, and mere verbal formulas, if inconsistent with the real intention, are to be disregarded. It does not matter by what name the parties chose to designate it. But the existence of a contract, the meeting of the minds, the intention to assume an obligation, and the understanding are to be determined in case of doubt not alone from the words used, but also the situation, acts, and the conduct of the parties, and the attendant circumstances.

17 Am.Jur.2d *Contracts* § 4 (1991). Furthermore, when a valid and enforceable contract has been found, the party seeking to invalidate the contract must bear the burden of proving adequate grounds for its invalidation. ***Williamson v. Upchurch***, 768 S.W.2d 265, 269 (Tenn. Ct. App. 1988) (citations omitted). Wife presents multiple facts to support her assertion that she believed the agreement to be contingent upon the execution of a marital dissolution agreement and/or court approval; however, as discussed below, none of these facts adequately established, to the trial court's satisfaction, her contention that the parties never reached a meeting of the minds with respect to the finality of the signed agreement.

Wife argues that the contingent nature of the mediation agreement is shown by its mentioning of the execution of a marital dissolution agreement and by Husband's subsequent tendering of the drafted MDA. In essence, Wife would have us believe that, after seven hours of mediation and the signing of the resulting document, the parties only intended to agree to later review, for *possible* approval, a marital dissolution agreement that contains the same 32 items addressed in the handwritten document. This argument is without merit. We agree that the execution of a marital dissolution agreement was contemplated by the terms of the mediation agreement. Several provisions of the agreement include the clause "following [the] execution of the MDA." There is no doubt that the parties anticipated that a more formal document would be drafted and signed. This, however, does not mean that the validity of their agreement as to the 32 items was *contingent* upon this being done. The parties signed the mediation agreement. We conclude from this – as did the trial court – that they signed this document to signify their agreement to its terms.

Wife also claims that the existence of other terms in the drafted MDA proves that the mediation agreement was not intended to be a final binding document. Regardless of whether the drafted MDA contains additional terms, Wife's argument that these "inconsistencies" establish that the parties never reached a meeting of the minds with regard to the 32 provisions in the mediation agreement misses the mark. A dispute regarding the terms of the drafted MDA does not necessarily mean that the parties did not conclusively agree to the terms delineated in the mediation agreement. Admittedly, the parties never reached a meeting of the minds on *all* of the terms in the drafted MDA. If Husband were seeking to enforce the drafted MDA, which he is not, Wife would certainly have an argument. Here, however, Husband only seeks to enforce the signed mediation agreement as a separate and binding contract. The terms of the drafted MDA are immaterial on this issue.

For further support of her position, Wife frequently points to Tenn. Code Ann. § 36-4-103(b), which prescribes conditions that must be met before a court can grant a divorce on the ground of irreconcilable differences.[4] First, she contends that the trial court erred in not requiring the parties to comply with Tenn. Code Ann. § 36-4-103(b). Then, she asserts that the lack of child custody and maintenance provisions in the mediation agreement, which would be required in a marital dissolution agreement under Tenn. Code Ann. § 36-4-103(b), establishes that the parties only intended the mediation agreement to be a proposal, contingent upon the execution of a marital dissolution agreement and/or court approval. We find Wife's reliance on Tenn. Code Ann. § 36-4-103(b) to be without merit. The omission of child custody and maintenance provisions from the mediation agreement does not prove that the parties did not intend the mediation agreement to be a final resolution *with respect to the 32 provisions included in the signed document*. Additionally, whether or not the parties complied with Tenn. Code Ann. 36-4-103(b) is immaterial. The trial court ultimately found that both parties were entitled to a divorce pursuant to Tenn. Code Ann. § 36-4-129(b). Irreconcilable differences was not the ground upon which the parties' divorce was premised.

Wife also makes repeated references to a note that was written and signed by her attorney sometime during the mediation process and attached to her copy of the mediation agreement. The note states that "[t]he proposal suggested by [Husband] as of September 15, 2004, is within range of reasonableness but it is not what I would recommend." Wife contends that this proves that she believed the mediation agreement to be a mere proposal, entitling her to the right to later review and alter the agreement prior to signing a final agreement. The existence of the note is undisputed, but again, it does not prove what Wife claims it proves. On its face, the note simply states what it states: in the opinion of Wife's counsel, the terms are within the range of reasonableness but is not what he would recommend. Despite this recommendation, Wife signed the mediation agreement. Her issue on this point is without merit.

---

[4] Tenn. Code Ann. § 36-4-103(b) (2005) provides the following:

> No divorce should be granted on the ground of irreconcilable differences unless the court affirmatively finds in its decree that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the equitable settlement of any property rights between the parties.

On numerous occasions in her brief, Wife attempts to attack the finality of the mediation agreement by arguing that an inconsistency in Husband's motion to enforce the agreement and the trial court's memorandum opinion granting the motion further supports the inconclusive nature of the mediation agreement. Husband's motion states that the signed mediation agreement resolved "all issues created by the dissolution of the parties' marriage." In its memorandum opinion, the trial court held that the mediation agreement was "valid and enforceable between the parties as to the property and support rights existing between them in this divorce action; and [t]hat this cause shall be set for further hearing upon any and all remaining issues." Wife argues that the fact the trial court set a future hearing for "all remaining issues" indicates that the mediation agreement was not a memorandum of a final meeting of the minds. This argument misses the point. The mediation agreement was enforced as a final contract *as to the provisions addressed therein*. Those agreed-upon provisions were not affected by the fact that the trial court held that other issues (*i.e.,* grounds for divorce, Husband's order of protection against Wife, and Wife's motion for relief pending appeal) would require a further hearing.

The trial court heard ample evidence regarding Wife's allegation that the mediation agreement was only intended as a "contingent" document. Within the bounds of its discretion, the trial court determined that the evidence did not sustain Wife's argument. Wife was represented by counsel at all times during the mediation. She was an experienced Rule 31 mediator, who admittedly "underst[ood] the process inside out." Nothing in the record before us suggests that the terms of the signed mediation agreement were intended to be contingent upon a later-executed marital dissolution agreement and/or court approval. The relevant facts in the record reflect, without equivocation, that the parties contemplated and intended the mediation agreement to be a final binding contract with respect to its 32 provisions.

VII.

Wife also argues that the trial court erred in finding that she failed to establish lack of mental capacity and duress as defenses to enforcement of the mediation agreement. This Court recently summarized the law of mental capacity as a defense to the validity and enforceability of a contract as follows:

> The degree of mental capacity required to enter into a contract is a question of law. Competency to contract does not require an ability to act with judgment and discretion. All that is required is that the contracting party reasonably knew and understood the nature, extent, character, and effect of the transaction. Thus, persons will be excused from their contractual obligations on the ground of incompetency only when (1) they are unable to understand in a reasonable manner the nature and consequences of the transaction or (2) when they are unable to act in a reasonable manner in relation to the transaction, and the other party has reason to know of their condition.

-8-

All adults are presumed to be competent enough to enter into contracts. Accordingly, persons seeking to invalidate a contract for mental incapacity have the burden of proving that one or both of the contracting parties were mentally incompetent when the contract was formed. It is not enough to prove that a person was depressed or had senile dementia. To prove mental incapacity, the person with the burden of proof must establish, in light of all the surrounding facts and circumstances, that the cognitive impairment or disease rendered the contracting party incompetent to engage in the transaction at issue according to the standards set forth above.

*Rawlings v. John Hancock Mutual Life Ins. Co.*, 78 S.W.3d 291, 297 (Tenn. Ct. App. 2001) (internal citations and footnotes omitted).

In its memorandum opinion, the trial court found the following with respect to Wife's assertion that she lacked the mental capacity necessary to enter into a binding contract:

[Wife] testified that at the time of signing the mediation agreement, she had become tired of the process and desired to settle the case to eliminate the involvement of her mother and children in the trial. However, the evidence does not sustain that [Wife] lacked sufficient mental capacity to enter into the agreement and the Court finds the evidence to preponderate otherwise. While [Wife] testified that she was ill, upset, in pain, and under mediation at the mediation, the Court did not find her testimony to be persuasive as to her lacking sufficient mental capacity to enter into the mediation agreement. No one who was present at the mediation corroborated [Wife's] testimony. To the contrary, both [Husband] and the mediator testified, in effect, that the wife appeared to be lucid and mentally capable.

The evidence does not preponderate against the trial court's finding on this issue. Wife testified that the divorce proceeding had caused her severe emotional distress, and that she was unable to obtain meaningful sleep during the 24 hours leading up to the mediation. She stated that, during the mediation, she suffered bodily pain as a result of a recent surgical procedure. She testified that she had taken higher than prescribed dosages of a narcotic pain medication and an antidepressant during the course of the mediation. She stated that, during the latter stages of the mediation session, she developed a migraine headache and administered a medicinal injection to alleviate the pain.

The issue before us is whether the evidence preponderates against the trial court's findings with respect to Wife's mental capacity. The trial court, in assessing the credibility of Wife's testimony, found that her testimony was not "persuasive." Given this credibility determination, we cannot say that the evidence preponderates against the trial court's findings regarding Wife's mental capacity.

Similarly, we hold that the trial court did not err in determining that Wife failed to establish her defense of duress. Duress is defined as "an unlawful restraint, intimidation, or compulsion of another to such an extent and degree as to induce such other person to do or perform some act which he is not legally bound to do, contrary to his will and inclination." *McClellan v. McClellan*, 873 S.W.2d 350, 351-52 (Tenn. Ct. App. 1993) (citing *Johnson v. Ford*, 147 Tenn. 63, 86, 245 S.W. 531 (1922)). "The alleged coercive event must be of such severity, either threatened, impending or actually afflicted, so as to overcome the mind and will of a person of ordinary firmness." *McClellan,* 873 S.W.2d at 351-52 (citing *Fogg v. Union Bank*, 63 Tenn. [4 Baxter] 530, 535 (1830)).

Wife testified that, prior to the mediation, Husband sent messages threatening to "destroy her" if their divorce case proceeded to trial. She also stated that she was shocked and distressed to find out that Husband had subpoenaed her 80-year-old mother to the trial and included the parties' two children in his list of trial witnesses. Wife claims that these actions by Husband were intended to intimidate her and amount to duress. We do not agree. Husband's listing and subpoenaing of trial witnesses was reasonable given the fact that the parties' divorce trial was set to occur five days after the mediation. Furthermore, the proof does not establish that Husband's alleged remark to "destroy her" at trial compelled Wife to go against her will at the mediation session. Wife's testimony simply does not rise to the level required for a duress defense. *See McClellan*, 873 S.W.2d at 351-52 (holding that a wife's threat to file a divorce action did not amount to duress); *Golden v. Hood*, No. E1999-02443-COA-MR3-CV, 2000 WL 122195, at *2 (Tenn. Ct. App. E.S., filed January 26, 2000) (holding that an alleged threat to withdraw as the party's counsel if the party fails to sign the proposed mediation agreement did not constitute duress); *see also* 86 C.J.S. *Threats & Unlawful Communication* § 30 (1997) ("[T]he assertion of an intention to pursue a legal remedy ordinarily is not considered duress."). Again, Wife failed to carry her burden of proof. The evidence does not preponderate against the trial court's findings on the issue of duress.

VIII.

Wife additionally asserts that the trial court committed reversible error by permitting the mediator to testify regarding Wife's mental capacity. She contends that the trial court's admission of the mediator's testimony violated both the confidentiality and admissibility of evidence standard with respect to Rule 31 mediations. *See* Rules 31(10)(d) and 31(7), Rules of the Supreme Court of the State of Tennessee ("Rules of the Supreme Court") (2005).

Rule 31(10)(d) states that participating Rule 31 neutrals shall "[p]reserve and maintain the confidentiality of all information obtained during [the proceeding] and shall not divulge information obtained by them [during the proceedings] without the consent of the parties, except as otherwise may be required by law." Rule 31(7) addresses the admissibility of evidence of conduct or statements made in the course of a Rule 31 proceeding. The rule states that such evidence "shall be inadmissible to the same extent as conduct or statements are inadmissible under Tennessee Rule of Evidence 408." Tenn. R. Evid. 408 provides that evidence of conduct or statements made in compromise negotiations are "not admissible to prove liability for or invalidity of a civil claim or its amount or a criminal charge or its punishment." However, Rule 408 "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id.*

In the instant case, the mediator testified as to whether she perceived Wife as fully understanding and participating in the mediation process. She stated that Wife seemed to understand the parties' assets, and that she did not recall noticing any confusion on Wife's part. She stated that Wife appeared to be able to participate fully in the process, and that she did not observe any slurred speech by Wife. She further testified that she would not have allowed Wife to sign the mediation agreement had she noticed any confusion or incapacity on Wife's part.

Rule 31 confidentiality and inadmissibility of evidence under Tenn. R. Evid. 408 are not implicated by the mediator's testimony in this case. *See* Rule 31(5), Rules of the Supreme Court (requiring Rule 31 neutrals to file a report specifically addressing whether both parties appeared and participated in the process); *see also* **Persada**, 2002 WL 31640564, at *1 (noting that, in a similar mediation agreement context, the mediator testified "that both parties seemed to fully understand and acquiesce in the agreement"). The mediator in this case was careful not to testify to statements or assertive conduct made by Wife. She did not disclose confidential information or attempt to prove liability via conduct or statements made in the course of the mediation. We find no error in the trial court's decision to receive the testimony of the mediator in this case.

IX.

In summation, we conclude that our recent decision in **Myers v. Myers** controls the instant case. The parties in **Myers**, a divorcing husband and wife, reached a settlement agreement after a six-hour mediation session. 2005 WL 936925, at *1. The agreement was memorialized by a five-page written document. *Id.* The document was drafted on site by the mediator and signed by both parties and their attorneys. *Id.* The husband's attorney then drafted a marital dissolution agreement, but before it was completed, the wife repudiated the agreement. *Id.* An evidentiary hearing was held in response to the husband's filing of a motion to enforce the mediation agreement. *Id.* The wife testified that she believed her husband misrepresented her interest in their property, and that the agreement was therefore unfair. *Id.* She also testified that she felt pressured to sign the agreement.

*Id.* After considering the wife's testimony and proof regarding fraud, mistake, duress, and any other ground to invalidate the contract, the trial court determined that the wife had simply changed her mind and entered a judgment enforcing the mediation agreement. *Id.*, at \*3. This Court affirmed that judgment. *Id.*

Wife attempts to distinguish the current situation from *Myers* by stating that the party seeking to repudiate the agreement in *Myers* did not offer "evidence to dispute the other party's claim that a 'meeting of the minds' was reached relative to all essential matters of the purported agreement." In essence, Wife appears to be asserting that the case of *Myers v. Myers* does not control because, unlike Wife in the instant case, the repudiating party in *Myers* did not present evidence disputing the parties' intended finality of the signed agreement. This argument is not well-taken. As analogous to the matter now before us, the wife in *Myers* disputed the husband's contract claim by arguing that her repudiation was permissible under *Harbour* and by offering evidence regarding her claim of certain contract defenses. The fact that Wife also asserts that the parties never contemplated the mediation agreement as a final document does not sufficiently distinguish the present case from *Myers*. This additional assertion is merely another contract defense and attempt at rescission. Thus, as previously discussed, the applicable rules of contract law govern. As found by the trial court in the instant case, Wife simply failed to present sufficient evidence to justify a finding that a meeting of the minds did not occur with respect to the finality and intended purpose of the signed mediation agreement.

## X.

Wife filed a motion to supplement the record with certain documents. Husband objects to the requested supplementation. There is nothing in the two documents referred to in the motion other than argument and statements of counsel for the parties. The contents of those documents have no bearing on the issues in this case. The motion is denied.

## XI.

While we find no merit in the issues raised by Wife, we do not consider this appeal to be frivolous. *See **Cole v. Dych***, 535 S.W.2d 315, 323 (Tenn. 1976) (Henry, J.) (on petition to rehear). Consequently, we decline to award damages for a frivolous appeal.

## XII.

The judgment of the trial court is affirmed. The case is remanded to the trial court for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed against the appellant, Katherine C. McMahan.

_____
CHARLES D. SUSANO, JR., JUDGE