IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 28, 2012 Session

## CHAS ALAN SANDFORD v. KRISTINE ELAINE SANDFORD MCKEE

Appeal from the Chancery Court for Williamson County
No. 33704    Robbie T. Beal, Judge

No. M2010-00562-COA-R3-CV - Filed September 27, 2012

Husband and Wife were married for eight years when Husband filed for divorce. Husband had purchased 63 acres of real property before marrying Wife and split the property into two parcels. When dividing the property between the parties, the trial court determined the house and ten acres was Husband's separate property, but the appreciation on that parcel was marital property pursuant to Tenn. Code Ann. § 36-4-121(b)(1)(B). The trial court determined the remaining 53 acres was Husband's separate property and that Wife had no interest in that parcel. Wife appealed, claiming both parcels transmuted into marital property during the marriage. In the alternative, Wife argued that the increase in value of the other 53 acres was marital property due to work she performed on a guesthouse located on the 53-acre parcel. We disagree and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Dana C. McLendon III, Franklin, Tennessee, for the appellant, Kristine Elaine Sandford McKee.

Jonathan L. Stein, Brentwood, Tennessee, for the appellee, Chas Alan Sandford.

### OPINION

Chas Alan Sandford ("Husband") and Kristine Elaine Sandford McKee ("Wife") were married for eight years and had four children together. Husband filed a Complaint for Divorce, and following a four-day trial, the trial court issued a Final Decree of Divorce in which the property was divided, transitional alimony was awarded, and a parenting plan for the children was adopted. Mother was not satisfied with the way in which the real property

was awarded and appeals the trial court's judgment with respect to that issue alone. Because the issues on appeal are so limited, we will confine our discussion to the real property.

## I. HUSBAND'S PURCHASE OF REAL PROPERTY

The evidence at trial showed that in 1997, two years before he married Wife, Husband purchased a 63-acre farm with a house on it located on Guy Ferrell Road in Franklin, Tennessee. Husband testified that the house was in pretty rough shape with windows falling out, gutters missing, and the roof needing to be replaced. Father explained that making repairs to the house was "quite a task" and that he used his income and spent a lot of time to fix the house up.

Husband testified that he got a mortgage on the house and ten acres of the surrounding land in March 1999, shortly before marrying Wife:

> Well, I had a lot of reservations about the situation. I wanted to consolidate any debt and know what the value of the property was at the time. I kept it in my name. It was financing the house and 10 acres, so in my opinion, that 53 acres was free and clear for me. You know, I had a lot of concerns going in.

Husband had the house and ten acres appraised when he got the mortgage, and the fair market value at that time was $1,050,000. The other 53 acres were valued at $684,300.

Husband testified that there was a barn on the 53 acres that he had begun converting to a guesthouse by the time he married Wife. He testified that he built decks around it and put windows in before getting married. Husband testified that he did a majority of the work and that it was his "full-time job at that point." Husband testified that Wife's father assisted him to an extent in converting the barn to a guesthouse. Husband explained that his father-in-law, who lived in California and was a builder by trade, looked over a lumber list Husband put together and helped Husband frame the upstairs of the guesthouse over a period of six or seven days. Husband testified that his father-in-law then returned to California and Husband finished the guesthouse with the help of other people over the next four to six months.

Wife testified that she helped out with the guesthouse by assisting with the design as well as by picking out furniture, paint, decor, and appliances. Wife also testified that she sanded and painted the decks around the outside of the guesthouse. In addition to the

guesthouse, Wife testified about improvements to a barn that was also on the property.[1] She testified that she "helped order wood and helped find a couple of extra hands to help out." Wife also testified she helped with the paint and with the design. The guesthouse and barn are not situated on the ten acres surrounding the house, but are located on the adjoining 53 acres.

Husband testified that in December 2006 he took a mortgage out on the house and ten acres in the amount of $1,404,000. The Deed of Trust that was prepared in connection with this mortgage listed both Husband and Wife as "Borrower" and was signed by both Husband and Wife. Then, in June 2007 Husband got a home equity loan in the amount of $150,000. The house and all 63 acres were pledged as security for this loan, and, as with the earlier mortgage, both Husband and Wife signed the Deed of Trust.

Husband filed his Complaint for Divorce in July 2007 and had the Guy Ferrell Road property appraised a few months later, in November. The house and ten acres were valued at $1,200,000, and the house and all 63 acres were valued at $1,900,000. Husband had another appraisal prepared in May 2009, and at that point the house and ten acres were valued at $1,100,000. The house and all 63 acres were valued at $1,700,000. Wife testified that the fair market value of the Guy Ferrell Road property, including the house and all 63 acres, was $2,400,000 at the time of trial.

## II. TRIAL COURT'S ORDER

The trial court made the following findings with respect to the Guy Ferrell Road property:

1. Husband purchased the home at 1659 Guy Ferrell Road in Williamson County, Tennessee two years prior to the marriage. The home and ten (10) acres surrounding it had a value of $1,050,000.00 at the time of the marriage. To the extent the value of the home and ten (10) acres appreciated since the date of the marriage, the amount of appreciation will be considered marital property because of Wife's contributions to the upkeep and improvements of the home.

2. The remaining 52.64 acres at 1659 Guy Ferrell Road should remain Husband's separate property as Wife made no substantial contribution to the appreciation of the value in that property.

---

[1]Husband did not testify about the construction of a barn; his testimony was limited to the conversion of an existing barn to a guesthouse.

3.      With regard to the home and ten (10) acres, the present fair market value is $1,400,000.00; however, the mortgage indebtedness on said home is as much as the increase in equity from the date of the marriage. Husband will receive the home and ten (10) acres as his property. Of that property, the $350,000.00 of equity is marital property; however, as he is also responsible for the $350,000.00 mortgage indebtedness, the result is that Husband is receiving marital property with little, if any, equity.

As a result of the trial court's findings of fact, the court ordered the following with respect to the Guy Ferrell Road property:

1.      Husband shall receive the house and ten (10) acres located at 1659 Guy Ferrell Road, Franklin, Tennessee free and clear from any claims by Wife.

2.      The remaining 52.64 undeveloped land located at 1659 Guy Ferrell Road in Franklin, Tennessee shall be awarded to Husband free and clear from any claims by Wife.

Wife contests the trial court's classification of both the house and ten acres as well as the remaining 53 acres as Husband's separate property. She argues that she became an essential party to the $1.4 million loan Husband obtained in December 2006 and the $150,000 loan Husband obtain in June 2007 when she signed the Deeds of Trust in connection with each of those loans. Wife argues that "Mr. Sandford and the property benefitted to the tune of $800,000.00 from her signature. Mr. Sandford caused and allowed Mrs. Sandford to join him in this debt, and he benefitted from her exposure." As a result, Wife contends, the property that initially was separate property became marital property based on the legal construct of transmutation.

### III. STANDARD OF REVIEW

The determination whether an asset is separate or marital property is a question of fact. *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995); *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992). Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review the trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

## IV. CLASSIFICATION OF PROPERTY

When dividing the parties' property in a divorce proceeding, the court must first determine which property qualifies as "separate property" and which qualifies as "marital property." "Separate property" is defined as: "All real and personal property owned by a spouse before marriage . . . ." Tenn. Code Ann. § 36-4-121(b)(2)(A) (Supp. 2011). "Marital property" is defined as:

> (A) . . . all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. . . .

> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation . . . .

Tenn. Code Ann. § 36-4-121(b)(1)(A) and (B) (Supp. 2011). Whether an asset is separate property or marital property is a question of fact. *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995).

## V. SEPARATE AND MARITAL PROPERTY

Husband acquired the Guy Ferrell Road property prior to marrying Wife, so that property is properly categorized as "separate property" as of the time of the parties' marriage. The court found, however, that the appreciation on the house and ten acres constituted marital property based on Wife's contributions to the upkeep and improvements of the home. Husband does not dispute this finding.

With respect to the other 53 acres, Wife argues that any appreciation in value of that property should be considered marital property as well. Our Supreme Court has addressed when it is appropriate to find that an increase in separate property should be treated as marital property:

> [I]ncreases in the value of separate property during a marriage will not be considered marital property unless both parties "substantially contributed" to

the appreciation in the value of the property. Tenn. Code Ann. §36–4–121(b)(1)(B); *Harrison v. Harrison*, 912 S.W.2d 124, 127 (Tenn. 1995). While these contributions may be either "direct" or "indirect," Tenn. Code Ann. § 36–4–121(b)(1)(D), they must satisfy two requirements. *McFarland v. McFarland*, 2007 WL 2254576, at *6 (Tenn. Ct. App. Aug. 6, 2007). First, the contributions must be "real and significant." *Id*.; *Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). "Second, there must be some link between the spouses' contributions and the appreciation in the value of the separate property." *McFarland*, 2007 WL 2254576, at *6; *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 746 (Tenn. 2002). Whether a spouse made a "substantial contribution" to the preservation and appreciation of separate property is a question of fact. *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992).

*Keyt v. Keyt*, 244 S.W.3d 321, 328-29 (Tenn. 2007). Wife has the burden of proving not only that the 53 acres increased in value from the time she and Husband were married, but she must also show that she substantially contributed to the property's appreciation. *Keyt*, 244 S.W.3d at 328 n.7 (party claiming appreciation of separate property is marital property has burden of proving separate property fits within statutory definition of marital property); *Hartman v. Hartman*, 2004 WL 3044910, at *6 (same).

Wife did not present any evidence at trial that the value of the 53 acres had, in fact, increased from the time the parties married to the time of the divorce.[2] Husband presented evidence that the value of the 53 acres actually decreased from the time of the parties' marriage to the time of trial. Further, despite Wife's argument that she made "significant contributions to the guesthouse," Wife failed to present evidence of any link between her contributions and any appreciation in value of the 53 acres. In light of Wife's deficiencies in the proof necessary to succeed on her claim, we need not consider whether or not Wife's contributions to the guest house rise to the level of "real and substantial."

Because Wife has failed to satisfy her burden of proof on the issue of whether any appreciation in value of the 53-acre parcel should have been treated as marital property, we affirm the trial court's judgment that the 53 acres remains Husband's separate property and reject Wife's argument that any appreciation in that property became marital property.

---

[2]Wife testified that she believed the house and all 63 acres were worth $2,400,000, but she did not present any evidence of the value of the 53 acres alone.

## VI. Transmutation

Wife next argues that based on the doctrine of transmutation, both the house and ten acres as well as the other 53-acre parcel became marital property by the time of the parties' divorce. The trial court did not find either parcel transmuted into marital property, and based on the evidence and relevant law, we agree. The Court of Appeals has described transmutation thusly:

> [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses.

*Eldridge v. Eldridge*, 137 S.W.3d 1, 13-14 (Tenn. Ct. App. 2002) (quoting *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988)). We also addressed transmutation in *Lewis v. Frances*, 2001 WL 219662, (March 7, 2001), where we wrote:

> Conduct between the parties can affect the classification of the property. For example, if either spouse makes a gift of separate property to the marital estate, the property is transmuted into marital property. *McClellan v. McClellan*, 873 S.W.2d 350, 351 (Tenn. Ct. App.1993); *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988). A presumption of transmutation arises when a party uses separate funds to purchase property but places the property in the names of both spouses. *Wright-Miller v. Miller*, 984 S.W.2d 936, 941 (Tenn. Ct. App. 1998); *Barnhill v. Barnhill*, 826 S.W.2d 443, 452 (Tenn. Ct. App. 1991). Transfer of title in previously separately owned property to joint ownership also creates a presumption of a gift to the marital estate. *Kincaid v. Kincaid*, 912 S.W.2d 140, 142 (Tenn. Ct. App. 1995). Either of these presumptions can be rebutted with "evidence of circumstances or communications clearly indicating an intent that the property remain separate." *McClellan*, 873 S.W.2d at 351; *Batson*, 769 S.W.2d at 858.

*Id*. at *5.

Wife relies on the case *Anderson v. Anderson*, 2009 WL 3631029 (Tenn. Ct. App. Nov. 3, 2009), to support her argument that both parcels of property on Guy Ferrell Road transmuted into marital property. Unlike the case *sub judice*, however, the wife in *Anderson* helped make loan payments on the promissory note she signed, and the proceeds from the loan were used in part to refinance the existing mortgage on the property the

*Anderson* husband brought to the marriage. *Id.* at *2. The trial and appellate courts in *Anderson* relied on the wife's payments to conclude the property that started off as the husband's separate property was ultimately transmuted into marital property:

> Based on the fact that Ms. Anderson signed the note which allowed Mr. Anderson to refinance and improve the Brick Church Pike property and helped him make the payments, we cannot find that the evidence preponderates against a finding that the Brick Church Pike property became marital property by transmutation.

*Anderson*, 2009 WL 3631029, at *3.

In the case before us, Wife presented no evidence that she signed either note, assumed liability for them, or that she made any payments on the loan Husband obtained in December 2006 or the loan Husband obtained in June 2007. Instead, Wife simply relies on the signatures she put on the two Deeds of Trust to argue that both the house and ten acres as well as the other 53 acres were transmuted into marital property.[3]

We do not believe that Wife's signature on the Deeds of Trust has any effect on her ownership interest in the house and ten acres or in the 53-acre parcel. It is not unusual for a bank, when loaning money to one spouse who is the record owner of a piece of property, to require the other spouse to sign a Deed of Trust to protect the bank's interest in the property. In fact, Husband testified on cross examination that the bank required Wife's signature for that very reason. Contrary to Wife's suggestion, however, the act of signing one or more Deeds of Trust, without more, does not transfer any rights in the property to the nonowner spouse that he or she does not otherwise have. We also note that as a result of the trial court's Final Decree, Husband alone is responsible for these debts.

Wife has the burden of establishing transmutation, *Nesbitt v. Nesbitt*, 2009 WL 112538, at *9 (Tenn. Ct. App. Jan. 14, 2009), and she has not submitted sufficient evidence to prove any transmutation occurred here. Husband's testimony was clear that he never had any intention for the house and ten acres or for the other 53 acres to become marital property. *See Eldridge*, 137 S.W.3d at 13-14 (transmutation requires intent on part of owner that property become marital property). Wife has not pointed to any acts Husband

---

[3]Wife also argues that her father loaned Husband money to improve the house and that this purported loan caused the house and ten acres to be transmuted into marital property. The evidence regarding money Wife's father may have loaned to the couple during their marriage was unclear, however, and the trial court did not make a finding of fact with regard to this purported loan other than to find Wife was responsible for a debt to her father. In any event, a loan from Wife's father, without more, does not effect transmutation.

took during their marriage to show he intended the house and ten acres or the 53-acre parcel to become marital property. *See Lewis v. Frances*, 2001 WL 219662, at \*6 (court held property wife acquired prior to marriage remained her separate property and did not transmute into marital property where husband made no financial contribution to acquisition or improvement of wife's property and wife showed no intent to transfer interest in property to husband).

Upon review of the record, we find the evidence does not preponderate against the trial court's finding that the house and ten acres as well as the remaining 53 acres are Husband's separate property and conclude that neither the house and ten acres nor the other 53 acres became marital property as a result of transmutation.

## VII. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment and assess the costs of this appeal to the appellant, Kristine Elaine Sandford McKee.

_____
PATRICIA J. COTTRELL, JUDGE